**Jess KRAFT and Barbara Kraft,
Plaintiffs–Appellants,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 92–1552.

United States Court of Appeals,
Sixth Circuit.

Argued March 5, 1993.

Decided and Filed April 7, 1993.

Richard A. Shapack (argued and briefed), Michael L. Geller (briefed), Shapack, McCullough & Kanter, Bloomfield Hills, MI, for plaintiffs-appellants.

Gary R. Allen, Acting Chief (briefed), Joan I. Oppenheimer (argued), Ann Belanger Durney, U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for defendant-appellee.

Before: MERRITT, Chief Judge; NELSON, Circuit Judge; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Jess and Barbara Kraft appeal the summary judgment dismissal of their 26 U.S.C. § 1341 claim for an income tax refund. For the following reasons, we affirm the district court's summary judgment dismissal.

### I.

Plaintiff-appellant Jess Kraft ("Kraft"), a licensed physician, practiced podiatry at Joel H. Haber, D.P.M., and Jess Kraft, D.P.M., P.C., a Michigan professional corporation ("the Corporation"), from December, 1973 through September, 1985. Kraft, at all relevant times, was an employee, officer, director, and 50% shareholder of the Corporation. The Corporation was not a Subchapter S corporation.

From 1981 through 1984, the Corporation billed Blue Cross/Blue Shield of Michigan ("Blue Cross") approximately $2,245,000 for medical services performed by the Corporation. Once received, the Corporation included Blue Cross' payments in its gross income. The Corporation, in turn, paid Kraft wages for the fiscal years ending August 31, 1980 ($231,000), August 31, 1981 ($235,000), August 31, 1982 ($210,000), and August 31, 1983 ($249,000), which Kraft reported on the joint federal income tax returns he filed with his wife, plaintiff-appellant Barbara Kraft.

In September, 1984, a federal grand jury returned a 34–count Indictment charging Kraft with illegal distribution of controlled substances and mail fraud. Specifically, the Indictment alleged that Kraft performed unnecessary foot and toe surgeries on drug dealers and users by promising them Dilaudid, Percodan, and Demerol prescriptions. According to the Indictment, Kraft then submitted the bogus claims to Blue Cross which resulted in the wrongful payment of $84,160 to Kraft, though Blue Cross claims that Kraft actually defrauded it of $680,000, and Kraft claims that he "improperly billed" Blue Cross for only $19.

On or about April 3, 1985, the United States filed a one-count Information charging Kraft with mail fraud:

That beginning in or about January of 1981, and continuing up to in or about November, 1983, Dr. Jess Kraft, D.P.M., defendant herein, devised and intended to devise a scheme and artifice to defraud Blue Cross/Blue Shield of Michigan and to obtain money through the use of false, fictitious and fraudulent pretenses and representations in the manner and means as follows:

1. At all times pertinent to this information, Jess Kraft, D.P.M., was a licensed podiatrist and operated two facilities doing business as Dr. Joel Haber, D.P.M., and Dr. Jess Kraft, D.P.M., P.C.

2. It was a further part of the scheme and artifice that Dr. Kraft, D.P.M., billed and caused to be billed Blue Cross/Blue Shield of Michigan for services purport-

edly rendered to persons insured by Blue Cross/Blue Shield of Michigan, when in truth, and as the defendant Dr. Jess Kraft, D.P.M., well knew, the services had been performed on different persons not insured by Blue Cross/Blue Shield of Michigan.

That on or about August 13, 1983, in the Eastern District of Michigan, Southern Division, Jess Kraft, D.P.M., defendant herein, in furtherance of the aforesaid scheme and artifice to defraud and to obtain money by false and fraudulent representations, did cause to be placed in an authorized depository for mail, to be sent and delivered by the United States Postal Service, Blue Cross/Blue Shield of Michigan check number 008978836, in violation of Section 1341, Title 18, United States Code.

Information at 1–2.

On April 3, 1985, Kraft and the prosecutor executed a Rule 11 Plea Agreement ("Plea Agreement") whereby Kraft agreed to plead guilty to Count Eleven of the Indictment ("Distribution and Aiding and Abetting in the Distribution of Dilaudid") and Count One of the Information ("Mail Fraud"). In return, the government agreed: to dismiss the remaining counts in the Indictment; to not seek forfeiture of Kraft's medical license; to limit Kraft's sentence to 15 years for Count Eleven of the Indictment, and 5 years for Count One of the Information, to run concurrently. The Plea Agreement also provided that "Dr. Kraft agrees to pay Blue Cross/Blue Shield of Michigan $160,000 restitution prior to sentencing pursuant to the Victim–Witness Protection Act of 1982." Rule 11 Plea Agreement at 2. On September 13, 1985, the district court sentenced Kraft to seven years imprisonment, and fined him $26,000.

On December 20, 1986, the Krafts filed Form 1040X ("Amended U.S. Individual Income Tax Return") with the Internal Revenue Service ("IRS") seeking a $78,688 tax refund for the 1985 tax year pursuant to Internal Revenue Code § 1341 (26 U.S.C. § 1341) which provides (in relevant part):

§ 1341. *Computation of tax where taxpayer restores substantial amount held under claim of right.*

*(a) General rule.*—If—

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to—

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

26 U.S.C. § 1341 (1988). The IRS denied the Krafts' claim:

The claim of right has been disallowed since taxpayer knew at the time of filing the claim with Blue Cross and Blue Shield that he was not entitled to receive payment from the insurance company since wrong names were given to the company. Although the revenue ruling and court cases cited [above] deal mainly with embezzled funds, the facts clearly point that funds gained by wrongful or illegal means do not benefit from Section 1341 since the recipient knowingly accepted monies under false pretenses. Since the taxpayer submitted claims under false and fictitious individuals, he was aware that he had no "right" to the monies.

Another factor in considering Dr. Kraft's case is the inclusion of the defrauded monies in income.

The payments went to the corporation of the doctor's which he shared with another doctor. The funds were reported by the corporation and the taxpayer drew his salary from it. The possibility remains to exist that the corporation paid taxes on this money, the taxpayer received this money in his salary and the other doctor received this in his salary. There is no audit trail of these monies to determine who the recipient of the monies is.

Section 165(c)(2) does allow a deduction as a non-business loss [the] restitution [of] illegally or wrongfully obtained monies, not a business loss. Only business losses qualify under Section 172 to be carried back as a net operating loss. Since the taxpayers' payment of the $160,000 would qualify as a non-business loss and not a business loss if allowed, the taxpayer is not entitled to claim a net operating loss back to 1981, 1982 and 1983 for the payback of funds to Blue Cross and Blue Shield.

Internal Revenue Service Form 886–A at 2–3.

The Krafts filed a second Form 1040X for 1985 seeking a $37,550.77 "ordinary and necessary trade or business expense" deduction, pursuant to 26 U.S.C. § 162(a), for legal fees paid defending against the criminal charges. The Internal Revenue Service denied this claim as well.

On November 27, 1990, the Krafts filed a Complaint against the United States in district court seeking a $91,301 income tax refund. Following cross-motions for summary judgment, the district court granted summary judgment to the United States with respect to Krafts' 26 U.S.C. § 1341 claim ($78,688), and granted summary judgment to the Krafts with respect to their 26 U.S.C. § 162(a) "ordinary and necessary trade or business expense" claim ($12,613):

26 U.S.C. § 1341 provides a special method for computing tax liability in circumstances where a taxpayer received an amount of income under a claim of right, included that sum as income, and in a subsequent taxable year was required to restore that amount because it was established that the taxpayer did not in fact have an unrestricted right to such amount. For purposes of § 1341, income included under a claim of right means income included as part of gross income because it appeared from facts then available that the taxpayer had an unrestricted right to such income. The test for the application of § 1341 is whether the obligation to repay arose from the same circumstances, terms and conditions of the transaction whereby the amount was included in income. It is clear that plaintiff Kraft's obligation to pay the $160,000 resulted from an obligation contained in a plea agreement. Moreover, we find that 26 U.S.C. § 1341 does not support plaintiffs' claim to a deduction for the $160,000 because plaintiffs never made a claim of right to the money received from Blue Cross, a condition required under § 1341. Although Blue Cross made payments in Jess Kraft's name, he immediately deposited the funds directly to his professional corporation. The corporation reported the Blue Cross payments as taxable income. Plaintiff elected to receive his taxable income from the professional corporation which co-mingled the Blue Cross payments with funds from other sources. Plaintiff never included the Blue Cross payments in his gross income. In other words, plaintiffs fail to meet the requirements for a deduction under § 1341 because plaintiffs' obligation to make restitution to Blue Cross did not arise out of the same circumstances, terms and conditions of his receipt of taxable income from the corporation.

However, plaintiffs' attorney fees incurred in the 1985 criminal action are deductible under 26 U.S.C. § 162(a). Attorney fees are deductible under § 162(a) if they relate to the conduct of the taxpayer's business and the criminal charges are based upon the taxpayer's business activities. Plaintiff was faced with a criminal indictment related to his business as a podiatrist. He had a con-

stitutional right to defend himself by hiring legal counsel which resulted in the accumulation of attorney fees in the amount of $37,550.77. Such fees are deductible under 26 U.S.C. § 162(a).

District Court's March 2, 1992 Order at 3–4 (citations omitted).

The Krafts timely filed a notice of appeal challenging the district court's 26 U.S.C. § 1341 "claim of right" determination. The United States has not appealed the district court's 26 U.S.C. § 162(a) determination.

## II.

### Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56. A district court's grant of summary judgment is reviewed *de novo. Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). In its review, this court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

■ The moving party has the burden of conclusively showing that no genuine issue of material fact exists. *Id.* Nevertheless, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *60 Ivy St. Corp.*, 822 F.2d at 1435.

■ "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (em-

phasis in original). The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. *60 Ivy St. Corp.*, 822 F.2d at 1435. If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### Dr. Kraft's Claim Under
### 26 U.S.C. § 1341

On appeal, the appellants maintain that they are entitled to recompute their 1985 tax liability pursuant to 26 U.S.C. § 1341:

The facts facing the district court on appellants' motion for summary judgment fell squarely within the ambit [of] Section 1341. Appellants had received, under a claim of right, certain dollars, namely the $160,000 which Kraft later disgorged in restitution to Blue Cross. The amounts received by Kraft were included in appellants' tax returns as income for the relevant years and the appropriate taxes were paid on those amounts. At all times, appellants believed, and it appeared that, they had an unrestricted right to the money. Subsequently, Kraft was required to restore the $160,000 of claimed (and previously taxed) income to Blue Cross in the form of a restitution payment of amounts Blue Cross claimed he did not have an unrestricted right to retain. This is a prime example of the scenario which Internal Revenue Code section 1341 is designed to encompass.

. . . .

[T]he test applied to determine the applicability of Section 1341 is (i) whether the taxpayer had a subjective belief that he had an unrestricted right to the funds when they were received, and (ii) that the taxpayer establishes that he did not have an unrestricted right to the funds in the year of repayment. It is a simple straightforward test.

. . . .

[T]he payment to Blue Cross clearly arose from the same circumstances,

terms and conditions as the original receipt and inclusion of the income. Kraft initially received the monies from Blue Cross as a result of surgical and non-surgical procedures performed on patients covered by Blue Cross. Kraft billed Blue Cross for these procedures. Blue Cross paid Kraft on these claims, which money was then funnelled through Kraft's professional corporation and then repaid to Kraft in the form of salary. Blue Cross subsequently claimed that the monies paid to Kraft were paid under fraudulent conditions. As a result, [Dr. Kraft] agreed to repay $160,000 to Blue Cross. The repayment arose directly from the same services for which Kraft was initially paid. As such, Kraft clearly satisfies this aspect of the IRC § 1341 test.

Judge DeMascio erroneously found that because the funds were deposited by Kraft directly into the corporation where they were allegedly commingled with other funds of the corporation ... prior to disbursing to Kraft in the form of salary, that Kraft did not have a claim of right to those funds. Judge DeMascio then asserts that the corporation reported the money as income, not Kraft. However, this overlooks the true substance of the transaction and accepts the appellee's "form over substance" argument. In reality, when Kraft reported the salary received from his professional corporation as income, and filed tax returns, he was, in actuality, reporting the money received from Blue Cross.

Appellants' Brief at 8–15 (citations omitted).

In response, the United States argues: that Dr. Kraft's restitution payment did not arise from the same circumstances, terms and conditions as Kraft's original receipt of income; that Kraft may not disregard the tax disadvantages of the corporate entity; that funds obtained by fraud are not obtained under a "claim of right"; and, that Kraft may not deduct the $160,000 payment under any other provision of the Internal Revenue Code (a prerequisite to applying 26 U.S.C. § 1341).

Specifically, the United States maintains: The restitution payment did not arise from the same circumstances, terms, and conditions as Kraft's original receipt of income. The item originally included in income was Kraft's salary from the Corporation. There has been no contention that Kraft's salary was paid in error, and Kraft has never had any obligation to return any portion of it for the years in issue. Nor has he done so. The $160,000 payment was not a return of "items" included on taxpayers' return and was not computed with reference to Kraft's salary, but was a payment to Blue Cross made as part of a plea agreement "in settlement and restitution of any and all civil claims of Blue Cross against Kraft and the Corporation." Kraft never received any funds directly from Blue Cross. It was the Corporation which did so and included these payments in its income. Thus, it is clear that taxpayers do not qualify for § 1341 treatment.

Taxpayers contend that although the Blue Cross funds, in form, were paid to the Corporation, in substance, they were received by Kraft, albeit in the form of salary payments, and that this Court should ignore the form and look at the substance. But it is settled that when a taxpayer has chosen to incorporate to do business, he must accept the tax disadvantages and cannot disregard the corporate entity even where there is only one shareholder.

. . . .

Section 1341 is inapplicable even if the corporate entity can be disregarded because funds obtained by fraud are not obtained under a claim of right. Section 1341, by its terms, applies only where it "appeared that the taxpayer had an unrestricted right to such item" of income. The courts have repeatedly held that § 1341 has no application where a taxpayer has embezzled or otherwise knowingly misappropriated funds which he is later required to return because it could not have "appeared" that the taxpayer had an unrestricted right to the money

so obtained.... The appearance of an unrestricted right to an item depends on objective facts and circumstances, not on a taxpayer's subjective belief.

It is undisputed that some, if not all, of the $160,000 payment was initially obtained by fraud.... Section 1341 is inapplicable to the extent that Kraft obtained money fraudulently from Blue Cross since it could not have appeared to him that he had an unrestricted right to the money so obtained.

. . . .

It is settled that for § 1341 to apply, the taxpayer must be entitled under some other provision of the Internal Revenue Code to a deduction for the payment in that year. [T]he courts have uniformly held that losses arising from repayment occasioned by fraudulent activity are not deductible under § 165(c)(1).... [F]raudulently obtaining funds from Blue Cross is no more the proper function of the trade or business of being a podiatrist than is embezzlement the proper function of the trade or business of being a salaried employee or a legitimate securities trader. Thus, the restitution payments are not deductible under § 165(c)(1).

Appellee's Brief at 15–23 (citations omitted).

In *Bailey v. Commissioner*, 756 F.2d 44 (6th Cir.1985), this court denied 26 U.S.C. § 1341 tax relief to a taxpayer ordered to pay a $1,036,000 fine (later deemed a restitution to settle a civil action) for violating the terms of a consent decree. Though the Krafts attempt to distinguish *Bailey*, we see no reason to depart from its holding. ▮▮▮▮ "Before invoking § 1341, the taxpayer must be entitled under some provision of the Internal Revenue Code to a deduction for the restoration payment in that year." *Bailey v. Commissioner*, 756 F.2d at 46 (citations omitted). Though the Krafts argue that "all amounts paid by Dr. Kraft in restitution to Blue Cross are deductible," Appellants' Reply Brief at 17–18, under 26 U.S.C. § 165(c)(1) ("losses incurred in a trade or business") because "[t]he repayment was directly related to

Kraft's actions as a podiatrist," Appellants' Reply Brief at 18, losses arising from the repayment of fraudulently obtained funds are not deductible under 26 U.S.C. § 165(c)(1). *See Mannette v. Commissioner*, 69 T.C. 990, 1978 WL 3337 (1978) (the repayment of embezzled funds is not deductible under section 165(c)(1) as a "trade or business" loss). Though the repayment of embezzled funds may be deductible under section 165(c)(2) ("losses incurred in any transaction entered into for profit, though not connected with a trade or business"), the deductibility of nonbusiness losses under section 165(c)(2) is limited to the amount of gross income not derived from the trade or business. Because the Krafts reported no nonbusiness income in 1985, 26 U.S.C. § 165(c)(2) offers them no benefit.

▮▮▮ Though the Krafts maintain that they can demonstrate an "entitlement to a deduction of the restitution payment under 26 U.S.C. § 162(a) as an ordinary and necessary expense paid or incurred in carrying on any trade or business," Appellants' Reply Brief at 18, their ability to do so hinges on the applicability of 26 U.S.C. § 162(f) ("Fines and penalties") which provides that "[n]o deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law." *Compare Stephens v. Commissioner*, 905 F.2d 667, 671 (2d Cir.1990) ("taxpayers who repay embezzled funds are ordinarily entitled to a deduction in the year in which the funds are repaid" if the restitution is primarily a remedial measure to compensate another party, not "a fine or similar penalty") *with Bailey v. Commissioner*, 756 F.2d at 47 ("the characterization of a payment for purposes of § 162(f) turns on the origin of the liability giving rise to it").

Dr. Kraft agreed "to pay Blue Cross/ Blue Shield of Michigan $160,000 restitution prior to sentencing pursuant to the Victim–Witness Protection Act of 1982." Rule 11 Plea Agreement at 2. Though the Krafts maintain that this payment does not constitute a penalty, Sixth Circuit precedent establishes that Dr. Kraft's restitution payment arose out of criminal proceedings

thereby constituting a non-deductible penalty. *See Bailey v. Commissioner*, 756 F.2d at 47 ("Bailey, therefore, forfeited the $1,036,000 as punishment for his violations of the Federal Trade Commission Act, and the payment was thus a fine imposed for purposes of enforcing the law and as punishment for a violation thereof.").

■ Moreover, the Krafts are precluded from invoking 26 U.S.C. § 1341 because Dr. Kraft paid $160,000 to Blue Cross as part of his Plea Agreement (relating to mail fraud and drug trafficking charges) which did not result from the same "circumstances, terms and conditions" as his salary from the Corporation.

It is unclear whether Blue Cross remitted its payments directly to the Corporation or to Dr. Kraft individually. *Compare* Appellants' Brief at 2 ("Payment for services rendered to Blue Cross was generally made by Blue Cross directly to doctors Haber and Kraft, individually, and they then deposited those monies into the Corporation.") *with* Appellee's Brief at 16 ("Kraft never received any funds directly from Blue Cross. It was the Corporation which did so and included these payments in its income.") *and* Indictment at 28–29 (Blue Cross remitted its payments to "Kraft PC Jess DPM"). We need not resolve this conflict, however, because the Blue Cross payments were deposited, at some point in time, in the Corporation's bank accounts where they were commingled with other funds and used to pay the Corporation's expenses, including the doctors' salaries. Dr. Kraft did not report the Blue Cross payments on his individual income tax returns; he reported his salary from the Corporation.

The Sixth Circuit previously summarized this rationale:

> Taxpayer is precluded from invoking § 1341 for another reason. [T]he taxpayer's obligation to repay must arise out of the specific "circumstances, terms and conditions" of the transaction whereby the amount was originally included in his income. The $1,036,000 Bailey paid in 1977 was a civil penalty imposed under 15 U.S.C. § 45 for his multiple violations

of an FTC consent order. The payment, therefore, arose from the fact that Bailey violated the consent order, and not from the "circumstances, terms and conditions" of his original receipt of salary and dividend payments from Bestline. Indeed, the amount of the penalty was not computed with reference to the amount of his salary, dividends, and bonuses, and bears no relationship to those amounts.

*Bailey v. Commissioner*, 756 F.2d at 47 (citations omitted). Indeed, we may fairly infer from this language this court's unwillingness to abandon the separate identities of a corporation and its owner-employee.

Furthermore, 26 U.S.C. § 1341 does not apply to a taxpayer who has embezzled or otherwise knowingly misappropriated funds which he is later required to return because the taxpayer never had an unrestricted right to the money so obtained. *See McKinney v. United States*, 574 F.2d 1240, 1243 (5th Cir.1978) ("When the item was embezzled funds, it is clear that it could not appear *to the taxpayer* that he had *any* right to the funds, much less an unrestricted right to them. This contention is consistent with the applicable regulations.") (emphasis in original), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

Jess and Barbara Kraft failed to set forth a genuine issue of material fact relevant to their 26 U.S.C. § 1341 claim. Accordingly, the district court properly granted the United States' motion for summary judgment.

### III.

We AFFIRM the district court's summary judgment dismissal of the Krafts' 26 U.S.C. § 1341 claim for the aforementioned reasons.

MERRITT, Chief Judge, concurring.

I concur basically in the reasons stated in Judge Contie's opinion for denying the Krafts' petition for a refund. I find the most clearly reasoned and persuasive case

on this subject to be *Perez v. United States*, 553 F.Supp. 558 (M.D.Fla.1982). There the president of a corporation who pled guilty to mail fraud and as a condition of parole was required to make restitution for kickbacks was not allowed a loss deduction for the amounts paid in satisfaction of the restitution requirement. That case appears to be directly in point. In a clear opinion by Judge Krentzman, the court reviewed the legislative history and development of § 1341. It shows that Congress enacted this section in order to overrule the case of *United States v. Lewis* 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951). It also shows that in enacting § 1341 Congress did not intend to overrule the "claim of right" doctrine. The court concluded "that Congress could not have intended to extend 1341 to embezzlers, for their income was not even taxable in 1954." 553 F.Supp. at 561. Thus for the reasons stated in Judge Contie's opinion and for the reasons stated in the *Perez* opinion, I would affirm the judgment of the District Court.

DAVID A. NELSON, Circuit Judge, concurring.

I have no problem with my colleagues' analysis if there is no genuine issue as to the fact—asserted by the government and denied by the taxpayers—that Dr. Kraft defrauded Blue Cross of at least $160,000. I consider it unnecessary to decide whether there is any genuine issue as to the amount of the fraud, however, because I do not believe that the Krafts come within the terms of 26 U.S.C. § 1341 in any event.

For a taxpayer to take advantage of § 1341, he must show, among other things, (1) that "an item" was included in a prior year's gross income because of an apparent unrestricted right to the item, and (2) that it was subsequently established that the taxpayer did not have an unrestricted right to "such item" or a portion thereof. 26 U.S.C. §§ 1341(a)(1) and (a)(2). Both sections clearly speak of the same "item."

The "item" included in the Krafts' gross income for the prior year at issue here was not a fee received from Blue Cross; it was, rather, a salary item received by Dr. Kraft from his corporation. It has not been established that Dr. Kraft had no unrestricted right to his salary as far as the corporation is concerned, and there is no contention that Dr. Kraft ever remitted any part of his salary to the corporation. It was Dr. Kraft's decision to use his corporation as a source of income, and on the facts of this case I can see no justification for piercing the corporate veil and pretending that there was never any corporation in the picture. I would affirm the judgment of the district court on that basis.