2 F.3d 1151
 4 NDLR P 188
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward L. FERBY, Plaintiff-Appellant,
v.
Marvin T. RUNYON, Postmaster General,[1] Defendant-Appellee.
 No. 92-5662.
 United States Court of Appeals, Sixth Circuit.
 Aug. 13, 1993.
 
 Before: KEITH and JONES, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Edward L. Ferby appeals the district court's decision to grant Defendant-Appellee Postmaster General ("Postmaster") summary judgment in this case involving claims of employment discrimination on the basis of race (Ferby is African-American) and handicap (Ferby is a rehabilitated alcoholic). We affirm in part, reverse in part, and remand for further proceedings.
 
 
 2
 * A
 
 
 3
 Ferby was employed by the United States Postal Service ("Postal Service") as a mail handler from April 1979 to July 1982. During this time, he had trouble controlling his consumption of alcohol. His alcoholism affected his work attendance and performance. In 1980, in an effort to assist Ferby in dealing with his problem, his supervisor referred him to the Postal Service's Program for Alcoholic Recovery ("PAR"), which consisted of structured counseling and meetings. Efforts to improve Ferby's condition and job performance appeared to be unfruitful, however, for his work attendance record did not improve over time. In early 1982, Ferby was issued a notice of proposed removal for poor attendance.
 
 
 4
 In May 1982, before Ferby's employment termination became effective, Ferby and the Postal Service entered into a novel "last chance agreement" whereby Ferby would be on probation from May 21, 1982 to May 20, 1983. Ferby was required to maintain satisfactory punctuality, attendance and work habits during that period of time on pain of employment termination.
 
 
 5
 On June 12, 1982, while on the job, Ferby began hurling profanities at the acting supervisor. He also hurled a metal "rest bar" weighing between 30 and 40 pounds at the supervisor, who was able successfully to avoid injury. After engaging in such behavior and overturning some furniture, Ferby was restrained by a co-worker. There is evidence to suggest that Ferby was intoxicated at the time. He was fired effective July 16, 1982.
 
 
 6
 Ferby claims that, from 1982 to the present, he has maintained a state of sobriety.
 
 
 7
 Apparently sometime in or before May 1987, Ferby requested reinstatement as a mail handler and received an unfavorable response. In a letter dated November 25, 1987, he again made a request for reinstatement to the Memphis, Tennessee, Division of the Postal Service. His request was denied by R. Dean Buchanan, Field Division General Manager/Postmaster, Memphis Division, in a letter dated January 28, 1988.
 
 B
 
 8
 In April 1988, Ferby filed a complaint with the Equal Employment Opportunity Commission, claiming that he was denied reinstatement on the basis of race and handicap. A hearing took place on the matter before an administrative judge on February 6-7, 1989. The judge subsequently issued a recommendation, finding that, though Ferby had not been discriminated against on the basis of his race, Ferby was a qualified handicapped person to whom reasonable accommodation on the part of the Postal Service was owed but was denied. The Postal Service then issued its final agency decision, accepting the recommended finding of no race discrimination and rejecting the administrative judge's recommendation with respect to the handicap discrimination claim.
 
 
 9
 Ferby challenged the decision of the Postal Service by filing a verified Complaint on July 24, 1989 in the United States District Court for the Western District of Tennessee. In his Complaint, he alleged that his "reinstatement as an employee of the United States Postal Service was denied and was expressly predicated upon racial discrimination and handicap discrimination (alcoholism)." J.A. at 4. In January 1990, the Postmaster moved for summary judgment and presented documentary evidence in support of his motion. This motion was granted by the district court in an Order Granting Defendant's Motion for Summary Judgment and Dismissing Case filed on March 12, 1992. A Judgment in a Civil Case was filed on March 18, 1992. Ferby timely appealed on April 13, 1992.
 
 II
 
 10
 "An appellate court applies the same test as used by the district court in reviewing a motion for summary judgment." Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). In determining whether summary judgment is appropriate, we "must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party." Kraft v. United States, 991 F.2d 292, 296 (6th Cir.1993); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); see also Boyd v. Ford Motor Co., 948 F.2d 283, 285 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992); 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 III
 
 11
 * Ferby contends that his denial of reinstatement was expressly predicated upon the fact that he is African-American. This claim arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17 (1988 & Supp. III 1992). Noting that Ferby has not shown any similarly situated white individual who was not similarly treated and that those chiefly responsible for denying Ferby's reinstatement were African-American, the district court found there to be no genuine issue of fact as to the elements of a prima facie case of race discrimination, and that the Postmaster was entitled to judgment as a matter of law. We agree.
 
 
 12
 Ferby has attempted to establish a prima facie case of race discrimination by showing that two similarly situated white individuals were granted reinstatement while he was not. See Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir.1992) ("As the Sixth Circuit has frequently phrased the requirements of a prima facie claim of disparate treatment using such a 'comparable non-protected person was treated better' element as one of the requisites, the plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees."). One white individual, Mary Norman, was terminated from her job as mail carrier for alcohol-related attendance problems. She was reinstated in July 1985 after successful participation in PAR. Another white individual, Thomas Hanrahan, resigned his post as a carrier due to a foot injury and was reinstated in June 1987. Neither of these individuals committed violent acts toward supervisors. As a result, neither is sufficiently similarly situated for purposes of Ferby's race discrimination claim. Seeid. at 583-84 (where alleged comparable non-minorities did not engage in conduct of "comparable seriousness" to that of a minority plaintiff, the plaintiff did not establish a prima facie case and summary judgment was appropriate). Since Ferby has brought forward neither evidence that similarly situated white individuals were not treated similarly, nor direct evidence of racial animus, see Terbovitz v. Fiscal Court, 825 F.2d 111, 115 (6th Cir.1987) ("Direct evidence of discrimination, if credited by the fact finder, removes the case from [the] McDonnell Douglas [ v. Green, 411 U.S. 792 (1973), framework for analyzing employment discrimination cases] because the plaintiff no longer needs the inference of discrimination that arises from the prima facie case.") (footnote omitted), summary judgment was appropriate on this score.
 
 B
 
 13
 * Ferby also claims that his "reinstatement as an employee of the United States Postal Service was denied and was expressly predicated upon ... handicap discrimination (alcoholism)." J.A. at 4. As the district court noted, such a claim falls under Section 504 of the Rehabilitation Act of 1973 (the "Act"), 29 U.S.C. Sec. 794 (1988), which provides, in pertinent part:
 
 
 14
 No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
 
 
 15
 To establish a prima facie case of discrimination under Section 504, Ferby:
 
 
 16
 must allege and prove (1) that he is a "handicapped person" under the Act, (2) that he is "otherwise qualified" for the position sought, (3) that he was excluded from the position "solely by reason of his handicap," and (4) that the position was part of a program or activity ... [conducted by the United States Postal Service].
 
 
 17
 Pesterfield v. Tennessee Valley Auth., 941 F.2d 437, 441 (6th Cir.1991). As in the Title VII context, establishing a prima facie case is not designed to be onerous. Cf. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Lynch v. Freeman, 817 F.2d 380, 388 (6th Cir.1987).
 
 2
 
 18
 The district court essentially found that there was no genuine issue of fact as to whether Ferby was denied reinstatement "solely by reason of his handicap," and that the Postmaster was entitled to judgment as a matter of law. The court stated that "the unrebutted proof indicates [Ferby] was denied reinstate[ment] because of his assault on [the acting supervisor on June 12, 1982] and for violating the last chance agreement." J.A. at 28.
 
 
 19
 We conclude that there is a genuine issue of material fact as to whether Ferby was denied reinstatement "solely by reason of his handicap." We find the views expressed by the Second Circuit in Teahan v. Metro-North Commuter R.R., 951 F.2d 511 (2d Cir.1991), cert. denied, 113 S.Ct. 54 (1992), to be instructive on this score. In Teahan, a Section 504 plaintiff worked for the Metro-North Commuter Railroad ("Metro-North"). His abuse of alcohol apparently resulted in a high rate of absenteeism. He was fired by Metro-North for this excessive absenteeism. From this, the district court concluded that Metro-North did not fire the plaintiff "solely by reason of his handicap." It thus concluded that the plaintiff had not established a prima facie case under Section 504, and granted summary judgment for Metro-North.
 
 The Second Circuit reversed, stating:
 
 20
 Teahan's contention that he was fired because he was an alcoholic presents a question of fact as to whether his excessive absenteeism was caused solely by his substance abuse. Only if the only reason for his absenteeism was appellant's alcoholism do we reach the second portion of his argument, that is, his claim that he was fired "solely by reason of" his handicap. Although the causal connection between absenteeism and alcoholism is ordinarily a question of fact, not properly capable of resolution under a Rule 56 motion, we must examine the facts in the light most favorable to the party against whom summary judgment was granted, and therefore assume the existence of the causal relationship here.... Hence, we must determine whether an employee who has excessive unexcused absences from work as the result of alcoholism is terminated "solely by reason of" his handicap when his employer relies on the absenteeism to terminate his employment. Analysis of the legislative purpose underlying the statute and of the case law interpreting Sec. 504 suggests the answer is "yes."
 
 
 21
 ....
 
 
 22
 We recognize that Metro-North may use its established criteria for employee performance without violating Sec. 504. But it does not inevitably follow that termination for conduct resulting from a handicap is not termination "solely by reason of" that handicap. By equating the employer's motivation for firing with the employee's conduct, the relevant Sec. 504 inquiry collapses; that is to say, absenteeism resulting from alcoholism is a factor that bears on whether an employee is "otherwise qualified" for the position, but absenteeism is irrelevant to whether he was terminated in the first place "solely by reason of" his handicap.
 
 
 23
 The "solely by reason of" inquiry is designed to weed out Sec. 504 claims where an employer can point to conduct or circumstances that are causally unrelated to the plaintiff's handicap....
 
 
 24
 That an employee be terminated "solely by reason of" his handicap is a necessary element of a Sec. 504 claim. But an employee may be terminated "solely by reason of" his handicap even though the employer disclaims any reliance on it....
 
 
 25
 ....
 
 
 26
 ... [A]n employer "relies" on a handicap when it justifies termination based on conduct caused by the handicap. An employer does not "rely" on a handicap when it can point to behavior that is not causally related to that handicap.
 
 
 27
 ....
 
 
 28
 We hold therefore that termination by an employer subject to the Act which is justified as being due to absenteeism shown to be caused by substance abuse is termination "solely by reason of" that substance abuse for purposes of Sec. 504. In sum, whether or not absenteeism is "caused" by a handicap is a question of fact. We note that the relevant inquiry is into the causal connection of those absences. We need not now decide the precise contours of causality necessary to satisfy this element of a Sec. 504 claim. If only a small percentage of Teahan's absences can be shown to have been "caused" by his alcoholism, and a sufficiently great number of absences are not so caused, such would provide grounds for Metro-North to terminate appellant as not prompted solely by reason of his handicap.
 
 
 29
 Id. at 515-17. Accord Golson-El v. Runyon, 812 F.Supp. 558, 560-61 (E.D.Pa.1993) ("[For purposes of establishing a prima facie case of handicap discrimination, t]he plaintiff must show that she was terminated from the position solely by reason of her handicap. Termination of any employee 'which is justified as being due to absenteeism shown to be caused by substance abuse is termination "solely by reason of" that substance abuse' for statutory purposes.... An employer does not 'rely' on a handicap, however, when it can point to behavior that is not causally related to that handicap as the reason for the termination."; since the plaintiff was fired due to her being excessively absent in violation of a "last chance agreement," and since "[n]one of these absences were due to alcoholism," the district court found that the plaintiff had failed to show that her termination was "solely by reason of" her handicap, and thus failed to state a prima facie case) (citation omitted); see also Cushing v. Moore, 970 F.2d 1103, 1108-10 (2d Cir.1992).
 
 
 30
 In the instant case, there is evidence in the record suggesting that Ferby, an alcoholic, was under the influence of alcohol at the time of the June 12, 1982 assault and the violation of the last chance agreement. See, e.g., J.A. at 195, 198, 353, 467. As did the Teahan court, we shall, for purposes of our de novo review of a summary judgment, view this evidence in the light most favorable to Ferby. In so doing, we may assume for present purposes that Ferby's alcoholism was the cause of his conduct. See Teahan, 951 F.2d at 515. There is also evidence in the record that the reason for Ferby's termination was his conduct on June 12, 1982. See, e.g., J.A. at 9, 304-05, 312; R. 17 (Exhibit 1) at 49 (Memorandum in Support of Defendant's Motion for Summary Judgment). We shall assume this to be the case. And finally, there is evidence in the record that the reason why Ferby was denied reinstatement was his termination for cause. See, e.g., J.A. at 273, 276, 278-79; R. 17 (Exhibit 1) at 45 (Memorandum in Support of Defendant's Motion for Summary Judgment). We shall assume this to be the case. Following the lead of Teahan, we conclude that the causal chain thus established is legally sufficient to establish that Ferby was denied reinstatement "solely by reason of his handicap." And we find that there is at least a genuine issue of fact as to whether Ferby was denied reinstatement "solely by reason of" his alcoholism; thus, to have granted summary judgment for the Postmaster on this ground was error.
 
 3
 
 31
 * The Postmaster contends, though the district court did not so contend, that summary judgment is appropriate because there is no genuine issue of fact as to whether Ferby was "otherwise qualified" to be reinstated, and that the Postmaster is entitled to judgment as a matter of law. It is not disputed that Ferby was removed for cause. See, e.g., J.A. at 278. With this in mind, the Postmaster maintains that "Postal Service regulations generally prohibit reinstatement of employees who were terminated for cause." Postmaster's Br. at 4 (emphasis added). Section 313.53 of the Postal Operations Handbook (P-11, TL-9, 10-1-83) ("Handbook") supports this view: "It is USPS policy to refuse employment to persons who were removed from the Postal Service or from other Federal employment for cause, or who resigned after being notified that charges proposing removal would be, or had been, issued." R. 17 (Exhibit 2) (Memorandum in Support of Defendant's Motion for Summary Judgment). However, as the Postmaster's above-quoted statement suggests, this policy is a general rule. Section 313.53 of the Handbook itself goes on to provide for the reinstatement of employees removed for cause in "exceptional cases." Id. Thus, the policies of the Postal Service do not necessarily disqualify all individuals who, like Ferby, were removed for cause. Based on our de novo review of the relevant record, we are not convinced that Ferby's case is necessarily precluded from being classified as one of these "exceptional cases."
 
 
 32
 Moreover, Section 873.11 of the Employee and Labor Relations Manual (Issue 10, 4-30-87) ("ELRM"), under the general heading, "Reinstatement of Recovered Employees," reads:
 
 
 33
 Where alcoholism or dependency on drugs was a primary contributing factor to events which led to an employee's removal or resignation from the Postal Service, one should not assume that the individual lacks the potential to become a productive postal employee in the future. Those who recover from the disease of alcoholism or from dependency on drugs may be fully employable. Therefore, their requests for reinstatement should be given serious consideration, recognizing that the experience gained in former postal employment is a potentially valuable asset.
 
 
 34
 R. 17 (Exhibit 3) (Memorandum in Support of Defendant's Motion for Summary Judgment). Section 873.21 of the ELRM goes on to enumerate conditions under which "[r]einstatement of an individual whose removal or resignation from the Postal Service was related to alcoholism or dependency on drugs may be considered." Id. Again, based on our independent review of the relevant record, we are not convinced that these conditions have not been or could not be met by Ferby such that he would be considered not qualified for reinstatement.
 
 
 35
 In sum, given the state of the record, we find ourselves unable to conclude that there is no genuine issue of fact as to whether Ferby's case is one of the "exceptional cases" where reinstatement may be warranted. The Postmaster has tried to show Ferby to be an undesirable candidate for reinstatement, and his showing may appropriately be considered at the next stage of proof in this case. Such a showing, however, does not, as a matter of law or logic, necessarily imply that Ferby is simply not qualified, and we reject the Postmaster's implication to the contrary.
 
 
 36
 b
 
 
 37
 Finally, the Postmaster contends that, for an individual to be "otherwise qualified" for reinstatement for purposes of a Section 504 prima facie case, there must be an opening for which the plaintiff applied. The Postmaster points to evidence in the record tending to show that reinstatement was not being used as a recruiting method as of the "latter part of 1987," J.A. at 273; see also id. at 276, and continuing into 1988, see id. at 384. This, he argues, shows that there was no opening for Ferby to fill.
 
 
 38
 There is evidence in the relevant record, however, that Ferby first requested reinstatement and was rejected sometime in or before May 1987--hardly the "latter part of 1987." See R. 17 (Exhibit 1) at 52 (Memorandum in Support of Defendant's Motion for Summary Judgment). Viewing this evidence in the light most favorable to Ferby, there is at least an issue of fact as to whether reinstatements were being considered during the time of Ferby's application.
 
 III
 
 39
 On the basis of the foregoing, we affirm that portion of the district court's decision dismissing Ferby's race discrimination claim, reverse that portion of its decision dismissing his handicap discrimination claim, and remand the handicap discrimination claim for further proceedings.
 
 
 
 [1]
 At the time the suit was initiated, Anthony M. Frank was the Postmaster General. Marvin Runyon took over this post on July 6, 1992--after Ferby filed his Notice of Appeal. Runyon has been automatically substituted for Frank as the Defendant-Appellee for purposes of this appeal. See Fed.R.Civ.P. 25(d)(1); Fed.R.App.P. 43(c)(1)