110 T.C. No. 2

UNITED STATES TAX COURT

ESTATE OF ALGERINE ALLEN SMITH, DECEASED, JAMES ALLEN SMITH, EXECUTOR, Petitioner <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket Nos. 19200-94, 3976-95.　　　　Filed January 12, 1998.

P (decedent's estate) settled and paid claims that were based in part on excessive royalties that had been paid to and reported by decedent in prior years.  In our previous opinion in these cases, we held that P was entitled to an overpayment of income tax pursuant to application of sec. 1341, I.R.C., and that such overpayment was includable in the taxable estate. <u>Estate of Smith v. Commissioner</u>, 108 T.C. 412 (1997). The parties now disagree on the method of calculating the overpayment.  R also seeks to amend the answer in order to decrease the credit for State death taxes that was previously allowed in the estate tax notice of deficiency.

<u>Held</u>:  Relief under sec. 1341, I.R.C., is restricted to the portion of P's settlement payments that represents items of income that were previously included in decedent's income.

_____

[*]This opinion supplements our opinion in <u>Estate of Smith v. Commissioner</u>, 108 T.C. 412 (1997).

Held, further, the amount of any overpayment that results from the application of sec. 1341, I.R.C., is not restricted to the amount computed under sec. 1341(b)(1), I.R.C.

Held, further, Rule 155(c), Tax Court Rules of Practice and Procedure, prohibits a party from raising new issues for purposes of making a computation pursuant to Rule 155.  R may not amend the answer.

Michael C. Riddle and Harold A. Chamberlain, for petitioner.

Carol Bingham McClure, for respondent.

SUPPLEMENTAL OPINION

RUWE, Judge:  On June 4, 1997, we issued our opinion in these consolidated cases.  Estate of Smith v. Commissioner, 108 T.C. 412 (1997).  Pursuant to that opinion, the parties filed separate computations pursuant to Rule 155.[1]  These cases are before the Court again because the parties cannot agree on the proper method for computing the overpayment of income tax and the deficiency in estate tax.[2]

The issues presented concern:  (1) The proper method for computing an income tax credit and resulting overpayment under

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect as of the date of decedent's death.

[2]As indicated in our previous opinion, we believed based on representations of the parties in their posttrial briefs that the parties were in agreement as to the computational aspects of these cases.

section 1341(a)(5) and (b),[3] and (2) whether respondent may now amend the answer to reduce the amount of the credit for State death taxes that was determined in the notice of deficiency. Respondent's Rule 155 computation uses the reduced credit in computing the estate tax deficiency.

These cases were submitted fully stipulated. Neither party alleges any factual dispute, and neither party argues that additional evidence is necessary to resolve the computational dispute. We shall summarize the relevant facts and our holdings for each of the remaining computational issues.[4]

## Section 1341 Credit

In 1970, decedent and her two aunts, Jessamine and Frankie Allen, entered into oil and gas leases from which they derived royalties during the years 1975 through 1980. Jessamine and Frankie Allen died in 1979 and 1989, respectively, and decedent served as the independent executrix of both their estates. Upon Jessamine's death, decedent inherited a portion of Jessamine's interest in the leased property. Upon Frankie's death, decedent inherited all of Frankie's interest in the leased property, including the remaining portion of Jessamine's interest which Frankie had previously inherited.

---

[3]The amount of the resulting overpayment will be determinative of the amount of a corresponding asset for estate tax purposes.

[4]A more complete statement of facts is contained in our previous opinion.

In 1988, Exxon filed suit against certain owners of royalty and mineral interests, including decedent and Frankie individually and against decedent as executrix of the estate of Jessamine.  Exxon claimed that it had overpaid royalties during the years 1975 through 1980.  Exxon's base claims for overpaid royalties were made against decedent and Frankie in the following amounts:

| | |
|---|---:|
| Algerine Allen Smith | $249,304 |
| Frankie Allen | 783,013 |
| Total Damages Sought | $1,032,317 |

Exxon's claim against decedent represented 24 percent of the total damages sought against decedent and Frankie.[5]

Decedent died in 1990 after she had inherited Jessamine's and Frankie's interests in the oil and gas properties.  Thus, by 1992, Exxon's claims for excess royalties paid to Jessamine, Frankie, and decedent were all being pursued against petitioner (decedent's estate).  In 1992, petitioner settled and paid the above claims for $681,840.

On her 1975 through 1980 Federal income tax returns, decedent reported gross royalties from the oil and gas leases in question in the following amounts:

---

[5]The record does not disclose how much of Exxon's stated claims related to excess royalties received by Jessamine prior to her death in 1979 or by Jessamine's estate after her death.

| Year | Amount |
|------|--------|
| 1975 | $58,512 |
| 1976 | 62,302 |
| 1977 | 45,061 |
| 1978 | 36,734 |
| 1979 | 36,846 |
| 1980 | 44,725 |
| Total | $284,180 |

On her returns for those years, decedent deducted an allowance for depletion in an amount which was 22 percent of the gross royalties reported.

Petitioner filed a Federal income tax return for the taxable year 1992 on which it reported and paid a tax of $8,338. This 1992 tax was computed without taking a deduction for any portion of the amount paid to Exxon in 1992.

Section 1341 provides relief to taxpayers who are forced to repay an item previously reported as income under a claim of right. Both parties agree that for purposes of section 1341, petitioner and decedent should be treated as one and that petitioner is entitled to section 1341 relief. Both parties also agree that relief should be in the form of a credit computed pursuant to section 1341(a)(5) and (b).

The pertinent provisions of section 1341 provide as follows:

SEC. 1341. COMPUTATION OF TAX WHERE TAXPAYER RESTORES SUBSTANTIAL AMOUNT HELD UNDER CLAIM OF RIGHT.

   (a) General Rule.--If--

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to--

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

 *    *    *    *    *    *    *

(b) Special Rules.--

(1) If the decrease in tax ascertained under subsection (a)(5)(B) exceeds the tax imposed by this chapter for the taxable year (computed without the deduction) such excess shall be considered to be a payment of tax on the last day prescribed by law for the payment of tax for the taxable year, and shall be refunded or credited in the same manner as if it were an overpayment for such taxable year.

Petitioner argues that the entire 1992 payment of $681,840 was in satisfaction of a claim against decedent's estate and, therefore, the entire amount is eligible to be used to reduce royalty income previously reported by decedent for purposes of

recomputing the amount of decedent's income tax for the years 1975 through 1980 pursuant to section 1341(a)(5). Respondent argues that the section 1341(a)(5) adjustment is limited to the portion of the $681,840 settlement that represents excess royalties that were paid to and reported by decedent during the years 1975 through 1980. We agree with respondent.

Neither party cites any case law to support their respective positions. Nevertheless, the language of the statute indicates that its relief is focused on a "taxpayer", who reported an "item" in "gross income" for a "prior taxable year" where it is established after the close of that taxable year "that the taxpayer did not have an unrestricted right to such item". Sec. 1341(a). The computation contained in section 1341(a)(5) directs the taxpayer to recompute the tax for the "prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years)." From this, we believe it is clear that section 1341 relief is restricted to items of income previously received and reported by a taxpayer who must repay those same items in a subsequent year.

Kraft v. United States, 991 F.2d 292 (6th Cir. 1993), supports this analysis. In Kraft, the taxpayer invoked section 1341 based upon amounts he was required to repay because of a fraud perpetrated in prior years. The fraudulently obtained funds had been deposited into a corporate account and reported as corporate income. The taxpayer's benefit came in the form of

salary from the corporation. Under these circumstances, the court held section 1341 inapplicable because it was the corporation, rather than the taxpayer, who had previously reported the item being repaid. Kraft v. United States, supra at 299.[6]

It is undisputed that petitioner, as decedent's estate, stands in the same position as decedent for purposes of applying section 1341. Thus, in these cases, section 1341 relief is restricted to that part of the $681,840 that represents the royalties that decedent had personally received and reported for the years 1975 through 1980. Decedent did not receive royalties paid to Jessamine and Frankie during the years 1975 through 1980, nor did she report or pay tax on those amounts. We hold that only that portion of the $681,840 that represents repayment of royalties previously received and reported by decedent can be used to provide benefits to petitioner under section 1341.

-------

[6]As succinctly stated in Judge Nelson's concurring opinion:

> For a taxpayer to take advantage of § 1341, he must show, among other things, (1) that 'an item' was included in a prior year's gross income because of an apparent unrestricted right to the item, and (2) that it was subsequently established that the taxpayer did not have an unrestricted right to 'such item' or portion thereof. 26 U.S.C. §§ 1341(a)(1) and (a)(2). Both sections clearly speak of the same 'item.'

> The 'item' included in the Krafts' gross income for the prior year at issue here was not a fee received from Blue Cross; it was, rather, a salary item received by Dr. Kraft from his corporation. * * * [Kraft v. United States, 991 F.2d 292, 300 (6th Cir. 1993).]

There is nothing in the record to indicate how much of Exxon's claim related to excess royalties paid to Jessamine or her estate, and respondent does not factor this into respondent's computation.  Since it appears likely that some part of the claim against decedent was attributable to royalties paid to Jessamine or her estate, respondent's decision not to allocate any portion of the settlement to Jessamine works in petitioner's favor.[7] Respondent's computation uses Exxon's allocation of its claims as between decedent and Frankie, which, as previously stated, attributes to decedent 24 percent of the excess royalty claims against decedent and Frankie.  Under these circumstances, we find that 24 percent is the most appropriate percentage for purposes of determining the portion of the settlement that is available for purposes of computing petitioner's section 1341 relief.

While we reject petitioner's argument that the entire $681,840 is available to adjust decedent's previously reported income, we also reject part of the computational method proposed by respondent.  Respondent's Rule 155 computation seems to assume that decedent received royalties in excess of what she reported for the years 1975 through 1980.  This assumption is based on unexplained allegations made by Exxon in its lawsuit.  Relying on Exxon's apparent claim that it paid more royalties to decedent than she reported, respondent's computation reduces the portion

---

[7] Respondent's counsel explained that there was no information upon which to allocate any of Exxon's claims to royalties paid to Jessamine or her estate.

of the settlement that respondent attributes to decedent's previously reported royalties.  However, the parties have stipulated that decedent reported all the royalties that she received for the years 1975 through 1980.  Under these circumstances, the Rule 155 computation cannot be based on the assumption that decedent received more royalty income during the years 1975 through 1980 than she reported on her returns.[8]

Based upon the available information, we find that 24 percent of the $681,840 settlement, or $163,641, should be attributed to excess royalties received and reported by decedent during the years 1975 through 1980.[9]  This $163,641 should then be allocated to each of the years 1975 through 1980 in proportion to the amount of gross royalties that decedent reported during each of these years.  For purposes of making the computations required by section 1341(a)(5), these respective amounts should be reduced by the proportionate amount of depletion allowance that decedent took on her 1975 through 1980 returns.  The resulting amounts should then be excluded from reported income

---

[8]Respondent made no argument that this aspect of the computation was an attempt to determine which portion of Exxon's claims against decedent was attributable to Jessamine's royalties.  Indeed, respondent's counsel acknowledged that Jessamine's royalties could not be identified and that respondent's computations give petitioner the benefit of any doubt on this point.

[9]This allocation does not attribute any portion of the $681,840 settlement to interest that Exxon claimed in addition to its base claim for excess royalties.  Respondent's proposed computation made no allocation of the $681,840 settlement to interest and presented no arguments regarding how such an allocation should or could be made.

for each year, and the resulting tax decrease should be computed for each year. The total of these tax decreases for prior years is the amount that is available as a credit for 1992 pursuant to section 1341(a)(5)(B).

Both parties agree that petitioner will be entitled to an overpayment as a result of applying section 1341(a)(5) and (b)(1), but they disagree about whether section 1341(b)(1) sets the limit on the amount of the overpayment.

For purposes of applying section 1341(b)(1) to these cases, the "taxable year" is 1992. Section 1341(b)(1) provides in pertinent part that "If the decrease in tax ascertained under subsection (a)(5)(B) exceeds the tax imposed by this chapter for the taxable year (computed without the deduction) such excess shall be considered to be a payment of tax on the last day prescribed by law for the payment of tax for the taxable year, and shall be refunded or credited in the same manner as if it were an overpayment for such taxable year." Respondent argues that the amount of the overpayment for 1992 is limited to the amount described in section 1341(b)(1). Petitioner disagrees. Again, neither party cites any previous cases dealing with this issue, and we have found none.

Section 1341 provides a method for determining the tax for a year in which a taxpayer repays items that had been reported as income in prior years under claim of right. Under section 1341(a)(5), the first step is to compute the tax for the taxable year (1992) without regard to any deduction allowable pursuant to

section 1341. Here that tax is $8,338, which petitioner previously reported and paid. The second step is to determine the amount of the decrease in tax for the prior years, which would result solely from the exclusion of the previously reported, but now repaid, items. Petitioner's 1992 income tax liability is then determined by subtracting the decrease in tax in prior years (1975 through 1980) from $8,338. We know that the decrease in tax from prior years exceeds $8,338. Therefore, we know that there will be no tax liability for 1992 even though petitioner has paid $8,338. It follows that petitioner has overpaid its tax liability for 1992 by at least $8,338.

Section 1341(b)(1) prescribes the method for dealing with the amount by which the decrease in tax for prior years exceeds the tax for 1992 as computed with no section 1341 deduction. It provides that "such excess shall be considered to be a payment of tax on the last day prescribed by law for the payment of tax for the taxable year [1992], and shall be refunded or credited in the same manner as if it were an overpayment for such taxable year." Sec. 1341(b)(1). Respondent's position is that section 1341(b)(1) places a limit on the amount of any overpayment to which petitioner is entitled.[10] We disagree. Section 1341(b)(1)

_____

[10]In the Written Statement In Support of Respondent's Rule 155 Calculation, respondent states:

> Section 1341(b)(1) provides in pertinent part that 'if the decrease in tax ascertained under subsection (a)(5)(B) exceeds the tax imposed for the taxable year

(continued...)

simply allows the amount of tax decrease from prior years that is not used up in computing the correct 1992 tax liability under section 1341(a)(5) to also be "considered" to be an overpayment. Nothing in section 1341(b)(1) limits the tax computation under section 1341(a)(5) from independently producing an incremental amount of the final overpayment.

## Credit for State Death Taxes

On its estate tax return, petitioner claimed a credit for State death taxes that it had paid in the amount of $23,917. In the notice of deficiency for estate tax, respondent determined that petitioner was entitled to a "Credit for state death taxes substantiated" in the amount of $144,089 and allowed this amount in computing the amount of the deficiency. In effect, respondent's notice of deficiency reflected a determination that petitioner had fully substantiated a right to the credit. The $144,089 amount was apparently based upon the total amount of State death taxes that petitioner would be liable for if respondent's adjustments were upheld. As part of the Rule 155

(...continued)
(computed without the deduction) such excess shall be considered to be a payment of tax on the last day prescribed by law for the payment of tax for the taxable year, and shall be refunded or credited in the same manner as if it were an overpayment for such taxable year.' (Emphasis added.) Thus, the amount of the overpayment is not the entire amount computed pursuant to section 1341(a)(5) as petitioner contends, but only the excess of that amount over petitioner's income tax liability for 1992 in the amount of $8,338.00. * * *

computation, respondent, for the first time, alleges that the notice of deficiency was in error, and that $120,172 of the credit allowed should have been reflected on a different line in the notice of deficiency as "Additional credit for state death taxes allowable, if substantiated." Had this been done, the amount of the deficiency determined by respondent would have been increased by $120,172.[11]

Respondent now wants to amend the answer to correct the error and increase the deficiency. Apparently, assuming that this will be permitted, respondent has included this adjustment in the Rule 155 computation. The problem with respondent's position is that Rule 155(c) precludes a party from raising a new issue in a proceeding under Rule 155. The credit for State death taxes was previously uncontested and has nothing to do with the other computational issues. We, therefore, deny respondent's motion for leave to amend answer. The Rule 155 computation should not include any change to the credit for State death taxes as determined in the notice of deficiency.

<u>Appropriate orders will</u>

<u>be issued</u>.

---

[11]Respondent recognizes that the actual impact of respondent's error will probably be far less than this since, as a result of our prior opinion, petitioner's taxable estate will be increased. To the extent petitioner is obligated to pay additional State death taxes, it would be entitled to a substantial amount of the credit already allowed. See sec. 2011.