Lakerra SUMTER, Plaintiff,

v.

UNITED STATES, Defendant.

No. 04–236T.

United States Court of Federal Claims.

July 20, 2004.

Lakerra Sumter, College Park, Georgia, pro se.

Robert N. Dorosin, Tax Division; David Gustafson, Assistant Chief; Mildred L. Seidman, Chief, Court of Federal Claims Section, Eileen J. O'Connor, Assistant Attorney General, United States Department of Justice, for the defendant.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

The plaintiff, LaKerra Sumter, filed a complaint in this court challenging the Internal Revenue Service (IRS) treatment of two tax years: 1999 and 2001. Ms. Sumter timely filed her 1999 income tax return. For tax year 1999, Ms. Sumter reported an adjusted gross income of $10,515.00, a taxable income of $3465.00 and an income tax liability of $520.52. She received a refund of $527.52 for her overpayment of federal income taxes. On March 13, 2003, Ms. Sumter filed an amended income tax return for the 1999 tax year. On this amended return, the plaintiff reported the same original adjusted gross income of $10,515.00; however, she included a new deduction of $10,515.00, equal to her salary. According to the plaintiff, the result of the amended filing was no taxable income and no tax liability for the year 1999. Ms. Sumter, therefore, requested a refund of her remaining 1999 federal tax withholdings in the amount of $520.52.

Ms. Sumter also timely filed her 2001 income tax return. Ms. Sumter reported an adjusted gross income of $26,974.00 and an adjusted taxable income of $19,524.00 with a federal tax liability of $2929.00. Ms. Sumter claimed a refund of $384.24 on her 2001 tax return; however, she improperly classified herself as "head of household" instead of as "single." She received a refund of $69.24 after the IRS Service Center corrected Ms.

Sumter's status classification to "single." On March 12, 2003, Ms. Sumter also filed an amended income tax return for the 2001 tax year. On this amended return, the plaintiff once again claimed deductions equal to her entire salary. According to the plaintiff, this deduction eliminated her 2001 taxable income liability, entitling her to a refund of $2929.00, which had been withheld.

On both amended tax returns, Ms. Sumter's justification for the itemized deduction of her salary income was an alleged "increased deduction caused by a claim of right founded on 26 USC Section 1341." [1] On July 11, 2003, regarding tax year 1999, and on June 13, 2003, regarding tax year 2001, the IRS notified the plaintiff that it had rejected both of her amended refund claims and had concluded that "[t]he position you have taken has no basis in law and represents a frivolous position .... Claims, such as yours, have been considered and rejected repeatedly as frivolous and without merit by the federal courts." In the rejection letters, the IRS requested that Ms. Sumter sign and return the accompanying Forms 2297 and 3363 within thirty days to retract the "frivolous" claims, allowing her to avoid the $500.00 penalties regarding her amended returns. On July 17, 2003, relating to tax year 1999, and on June 24, 2003, relating to tax year 2001, the plaintiff submitted letters to the IRS protesting the "frivolous filing" determinations and associated fines. On September 8, 2003, relative to the 1999 tax year, and on October, 20, 2003, relative to the 2001 tax year, the IRS sent Ms. Sumter a "Notice of Penalty Charge" confirming the assessment of the two $500.00 civil penalties relating to the frivolous amended tax returns.

Ms. Sumter timely filed her 2003 income tax return, on or about April 15, 2004. She again claimed an exemption of her entire salary on the basis of an alleged "unrestricted claim of right for personal labor," arising

---

1. The portion of the Internal Revenue Code (IRC) upon which the plaintiff relies, 26 U.S.C. § 1341 (2000), states that if the taxpayer did not have an unrestricted right to previously taxed income and the amount of such deduction exceeds $3000.00, then the amount taxed shall be "the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years)." IRC § 1341(a)(5)(B) (2000).

out of IRC § 1341. Unlike the IRS treatment of the amended 1999 and 2001 tax filings, the IRS processed the 2003 return without rejecting the exemption claim.[2] Ms. Sumter reported a gross salary income in 2003 of $32,908.00, adjusted to $30,660.00, and federal tax withholdings of $3725.00. Her resulting zero-taxable-income and zero-tax-liability status for her 2003 return resulted in a refund calculation of the $3725.00 withheld. After the IRS deducted Ms. Sumter's two $500.00, frivolous, document penalties for the submission of the 1999 and 2001 amended 1040 tax forms, together with accrued interest, as well as other penalties totaling $537.96, the IRS refunded $2187.04 to Ms. Sumter.

The plaintiff filed a complaint in this court on February 18, 2004, seeking a refund of taxes and penalty damages against the IRS, as follows: a refund of $520.52 in overpaid 1999 taxes and a refund of $2929.00 in overpaid 2001 taxes; $150,000.00 in "exemplary damages" ($75,000.00 each for tax years 1999 and 2001); $150,000.00 for "extrinsic fraud" and $150,000.00 for "intrinsic fraud" associated with the assessment of the two $500.00 penalties levied by the IRS for filing frivolous, amended tax claims ($75,000.00 each for tax years 1999 and 2001); $1000.00 for "unwarranted penalties"; and court costs and interest.

## DISCUSSION

The court recognizes that the plaintiff is proceeding *pro se* and, accordingly, the plaintiff is entitled to liberal construction of her pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). The United States Supreme Court reiterated this standard in *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977), and in *Hughes v. Rowe*,

449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Therefore, the court has construed the plaintiff's filings liberally and has attempted to give its best efforts to extract the legal theories plaintiff appears to assert. "This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States*, 59 Fed.Cl. 497, 499, *aff'd*, 98 Fed.Appx. 860 (Fed.Cir.2004), *reh'g denied* (2004).

The defendant has filed a motion to dismiss Ms. Sumter's tax refund claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, and even on appeal. *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States*, 56 Fed.Cl. 112, 115 (2003); *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001), *aff'd in part*, 281 F.3d 1376 (Fed.Cir.), *reh'g denied* (2002); *Bowen v. United States*, 49 Fed.Cl. at 675; *Vanalco, Inc. v. United States*, 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1355 (Fed.Cir.2002), *cert. denied sub nom. Penn*

---

2. This processing of the 2003 return by the IRS occurred after the filing of the present complaint in this court.

*Triple S v. United States,* 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (2002), *cert. denied,* 538 U.S. 978, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003); *Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir.2002), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003); *Consol. Edison Co. v. O'Leary,* 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consol. Edison Co. v. Pena,* 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States,* 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996); *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir. 1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.'"); *RCS Enters., Inc. v. United States,* 46 Fed.Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99; *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States,* 119 F.3d at 1580), *cert. denied,* 535 U.S. 1095, 122 S.Ct. 2290, 152 L.Ed.2d 1049 (2002); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d at 1167 (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir. 1991)); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States,* 873 F.2d at 1416; *Ho v. United States,* 49 Fed.Cl. 96, 100 (2001), *aff'd,* 30 Fed.Appx. 964 (Fed.Cir.2002); *Alaska v. United States,* 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. at 404–05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings,

but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."), *cert. denied*, 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Vanalco v. United States*, 48 Fed.Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491. The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) seeking a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied*, 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr*, 533 U.S. 289, 299 n. 10, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co.*

*of the West v. United States*, 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (2001); *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied*, 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; "'it does not create any substantive right enforceable against the United States for money damages.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan*, 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied*. 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1372 (Fed.Cir.), *reh'g denied, reh'g en banc declined* (2001), *aff'd*, 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed.Cir.2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1555–56 (Fed.Cir. 1997), *cert. denied*, 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" *White Mountain Apache Tribe v. United States*, 249 F.3d at 1372 (quoting *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States*, 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v.*

*United States*, 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g denied, reh'g en banc declined* (1997); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1009.

The plaintiff, LaKerra Sumter, seeks a refund of taxes withheld by the IRS for tax years 1999 and 2001 and penalty payments.[3] Because both parties have presented the court with matters outside of the pleadings, regarding the plaintiff's claims for a refund and for the assessment of $1000.00 in penalties, and because the court has relied upon this information, the defendant's motion to dismiss for failure to state a claim upon which relief can be granted on these issues is treated as a motion for summary judgment pursuant to RCFC 56. *See* RCFC 12(b); *Cienega Gardens v. United States*, 194 F.3d 1231, 1236, 1246 (Fed.Cir.1998) ("Considering matters outside the pleadings, the court treated the government's motion to dismiss as a motion for summary judgment, in accordance with Rule 12(b) of the Court of Federal Claims ('RCFC').... The court should have granted summary judgment ...."), *cert. denied sub nom. Sherman Park Apartments v. United States*, 528 U.S. 820, 120 S.Ct. 62, 145 L.Ed.2d 54 (1999); *Warr v.*

*United States*, 46 Fed.Cl. 343, 350 (2000) (the government's motion to dismiss for failure to state a claim upon which relief can be granted was treated as a motion for summary judgment because the court was presented with, and did not exclude, matters outside of the pleadings).

The Internal Revenue Code defines "gross income" as "all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, fringe benefits, and similar items ...." IRC § 61(a) (2000). The IRC identifies "taxable income" as "gross income minus the deductions allowed by this chapter (other than the standard deduction)." IRC § 63(a) (2000). In this case, after including her salary in her gross income, the plaintiff claims her entire salary as a deduction. Thereby, the plaintiff attempts to reduce her taxable income to zero and eliminate her income tax liability. The plaintiff argues that the deductions she relies on are "mandatory" and that she is not liable for any tax for 1999 and 2001. In support of her claim, the plaintiff cites IRC §§ 63(e)(2),[4] 1341(a)(5)(B), 183(b)(1),[5] 212(1)[6] and 26 C.F.R. § 1.211–1.[7]

3. When the complaint in this case was filed on February 18, 2004, the $1000.00 in penalties assessed by the IRS against Ms. Sumter for filing the 1999 and 2001 frivolous amended returns, had not been paid. However, following the filing of her 2003 tax return, the $1000.00 penalty was paid when the IRS deducted the amount due from the 2003 tax refund paid to the plaintiff. The defendant argues that this court lacks jurisdiction over the penalty assessed. The defendant is correct that jurisdiction is established based on the circumstances as they exist on the date of filing of the claim, *see Shore v. United States*, 9 F.3d 1524, 1527 (Fed.Cir.1993), and that, under the full payment rule, a taxpayer must pay the full amount of the tax principal due before filing a tax refund suit in this court. *See Flora v. United States*, 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623, *reh'g denied*, 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 902 (1960); *Shore v. United States*, 9 F.3d at 1527. The defendant also argued, however, that the civil penalty must be prepaid for jurisdiction to vest. The decision in *Shore*, however, suggests otherwise: "[o]nly if the taxpayers assert a claim over assessed interest or penalties on grounds not fully determined by the claim for recovery of principal must they prepay such interest and penalties as well as the assessed tax principal." *Id.* at 1527–28. The plaintiff's claim regarding the $1000.00 in assessed penalties is fully determinable by the reso-

lution of her 1999 and 2001 tax liability, moreover, the $1000.00 penalty now has been paid to the IRS.

4. "Any election [to itemize] under this subsection shall be made on the taxpayer's return, and the Secretary shall prescribe the manner of signifying such election on the return." IRC § 63(e)(2).

5. "In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed—(1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit ...." IRC § 183(b)(1).

6. "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—(1) for the production or collection of income ...." IRC § 212(1).

7. "In computing taxable income under section 63(a), the deductions provided by sections 212, 213, 214, 215, 216, and 217 shall be allowed subject to the exceptions provided in Part IX, Subchapter B, Chapter 1 of the Code (section 261 and following, relating to items not deductible)." 26 C.F.R. § 1.211–1 (2003).

■ The assertion by the plaintiff that IRC § 63(e)(2) gives her authority to itemize proper deductions is uncontested; however, the plaintiff's interpretation of the deductions allowed under IRC §§ 1341(a)(5)(B), 183(b)(1), and 212(1) is contested by the defendant, who argues that the plaintiff's legal theory is "devoid of any merit." The court agrees. Ms. Sumter's assertions are founded on her "claim of right" theory arising out of IRC § 1341, but IRC § 1341 is inapplicable to the present facts. IRC § 1341 only applies to situations in which the claimant is compelled to return the taxed item, or its equivalent, because of a mistaken presumption that the right held was unrestricted and, therefore, the item was previously reported, erroneously, as taxable income. *See Culley v. United States*, 222 F.3d 1331, 1333–34 (Fed.Cir.2000) ("[A] taxpayer who receives income 'under a claim of right and without restriction as to its disposition' must include the amount in his gross income for the year in which it was received, even though it is later determined that the taxpayer must repay the amount.") (citing *United States v. Skelly Oil*, 394 U.S. 678, 680, 89 S.Ct. 1379, 22 L.Ed.2d 642, *reh'g denied* 395 U.S. 941, 89 S.Ct. 1992, 23 L.Ed.2d 458 (1969)); *Griffiths v. United States*, 54 Fed.Cl. 198, 202 (2002) ("[T]he obligation to repay the money must arise from the 'same circumstances, terms and conditions of the transaction whereby the amount was included in income.'") (citing *Kraft v. United States*, 991 F.2d 292, 295 (6th Cir.), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993)). In the case before the court, IRC § 1341 is inapplicable to Ms. Sumter's claim because she has a continuing, unrestricted claim of right to her salary income and has not been compelled to repay that earned income in a later tax year. Section 1341 allows deductions relating to activities not engaged in for profit, which does not cover salary and earnings from employment.

■ Furthermore, the plaintiff alleges that IRC § 212 allows individuals to deduct ordinary and necessary expenses paid or incurred during the tax year for the "production or collection of income." Earnings from employment, however, cannot qualify as expenses incurred in the "production or collec-tion" of that same income. Similarly, the plaintiff's assertion that 26 C.F.R. § 1.211–1 expresses the intent of Congress that "the deduction provided by sections 212 ... shall be allowed" likewise lacks merit. In effect, Ms. Sumter attempts to claim that the deduction (her total salary) was a necessary expense for the production of that same salary. She provides no support or credible justification for her untenable position.

■ Ms. Sumter tries to cite case law in support of her "even exchange" argument; however, none of the cases she cites justify her position. In fact, the cases are contrary to her position. For example, Ms. Sumter cites the case of *Edwards v. Keith*, which, while discussing deferred income, explained that if an individual does a particular job and receives compensation for that work, "surely he includes that in his income return.... That certainly is income." *Edwards v. Keith*, 231 F. 110, 112 (2d Cir.1916). Two other examples of cases cited by the plaintiff are *Eisner v. Macomber*, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521 (1920) (explaining that taxable income is not a growth of an investment, but is "a gain, a profit, something of exchangeable value"), and *Conner v. United States*, 303 F.Supp. 1187, 1191 (S.D.Tex.1969) ("Whatever may constitute income, therefore, must have the essential feature of gain to the recipient."). None of these cases supports the plaintiff's arguments.

In short, the plaintiff presents a specious claim—the theory that wages, compensation for work rendered, are not subject to federal income tax. As noted by the IRS in its letters rejecting the plaintiff's amended claims for 1999 and 2001, this same theory has been urged by numerous taxpayers in many variations and locations, but has been uniformly rejected by the courts. *See e.g., Ledford v. United States*, 297 F.3d 1378, 1381 (Fed.Cir.2002) ("Ledford's view of the tax law is mistaken, as the tax code quite plainly defines income to include amounts received in compensation for services rendered."); *United States v. Connor*, 898 F.2d 942, 943–44 (3d Cir.) ("Every court which has ever considered the issue has unequivocally re-

jected the argument that wages are not income."), *cert. denied,* 497 U.S. 1029, 110 S.Ct. 3284, 111 L.Ed.2d 793 (1990); *Casper v. Comm'r,* 805 F.2d 902, 906 (10th Cir.1986) ("Merely raising the argument that value received for labor does not constitute taxable income, but rather constitutes a nontaxable exchange of property, justifies the imposition of sanctions [in the United States Court of Appeals for the Tenth Circuit]."); *Coleman v. Comm'r,* 791 F.2d 68, 72 (7th Cir.1986) ("The contentions in this case [including that wages are not income] are objectively frivolous. They have been raised and rejected so often that this circuit now handles almost all similar cases by unpublished orders. The Tax Court and the IRS were entitled to impose sanctions. We, too, regularly impose sanctions in these cases."); *Connor v. Comm'r,* 770 F.2d 17, 20 (2d Cir.1985) (per curiam) ("Wages are income. The argument that they are not has been rejected so frequently that the very raising of it justifies the imposition of sanctions." (citation omitted)). Thus, courts have clearly rejected the "even exchange" argument, which erroneously asserts that no taxes are owed on employment wages, since the income from the services rendered was a fair market value and, therefore, no profit or gain occurred as a result of the work performed. *See Brown v. U.S.,* 35 Fed.Cl. 258, 269 (1996) (explaining that *Lonsdale v. Comm'r of Internal Revenue,* 661 F.2d 71 (5th Cir.1981) rejected the "even exchange" argument), *aff'd,* 105 F.3d 621 (Fed.Cir.), *reh'g denied* (1997). Similarly, the plaintiff's arguments are without merit.

■ The plaintiff also challenges the determination by the IRS that the amended 1999 and 2001 returns submitted by the plaintiff were frivolous. IRC § 6702 sets out the guidelines to be used for determining when a claim is considered "frivolous" and subject to the imposition of penalties:

(a) Civil penalty. —If—(1) any individual files what purports to be a return of the tax imposed by subtitle A but which—. . . (B) contains information that on its face

indicates that the self-assessment is substantially incorrect; and (2) the conduct referred to in paragraph (1) is due to—(A) a position which is frivolous, or (B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws, then such individual shall pay a penalty of $500.

IRC § 6702. The relevant statutes and case law indicate that the plaintiff's assertion that her employment income is not taxable lacks any valid basis and is "substantially incorrect." The decisions by the IRS to find the plaintiff's 1999 and 2001 amended tax return filings "frivolous" were proper and not arbitrary or capricious. The plaintiff is not entitled to a refund on her 1999 and 2001 taxes and the penalty assessments imposed by the IRS were proper.

Although not raised clearly in her complaint, in subsequent filings with the court, Ms. Sumter also claims that the IRS failed to comply with IRC § 6402(k)[8] and her Fifth Amendment right to due process by failing to afford her an explanation of the disallowance of her claim. In the letters rejecting Ms. Sumter's amended 1999 and 2001 tax claims, however, the IRS explains the reasons behind the disallowance and states that her position has "no basis in law," and that her position has been considered and repeatedly rejected by the federal courts. The IRS deemed her argument as "frivolous," and encouraged the plaintiff to "seek advice from competent tax counsel or an attorney qualified to practice in your state to assist in answering your tax questions."

■ Regarding the plaintiff's Fifth Amendment due process claims, this court is not vested with jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to hear those claims. The Fifth Amendment, standing alone, without an underlying statutory or regulatory right to recover money damages, does not provide the necessary independent basis for jurisdiction in this court. *See Hamlet v. United States,* 63 F.3d 1097, 1107 (Fed.Cir. 1995), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996); *see also Crock-*

---

8. "Explanation of reason for refund disallowance. In the case of a disallowance of a claim for refund, the Secretary shall provide the tax-

payer with an explanation for such disallowance." IRC § 6402(k).

er v. United States, 125 F.3d 1475, 1476 (Fed.Cir.1997); LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed.Cir.1995); Collins v. United States, 67 F.3d 284, 288 (Fed.Cir. 1995) (citing additional cases); Mullenberg v. United States, 857 F.2d 770, 773 (Fed.Cir. 1988); Murray v. United States, 817 F.2d 1580, 1583 (Fed.Cir.1987); United States v. Connolly, 716 F.2d 882, 886–87 (Fed.Cir. 1983), cert. denied, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). See also Frank's Livestock & Poultry Farm, Inc. v. United States, 17 Cl.Ct. 601, 606–07 (1989) (explaining that a person may sue "federal officials acting under color of authority who have violated that individual's constitutional rights," but that "constitutional violations, other than a taking claim under the Fifth Amendment, do not state a cause of action for monetary relief against the United States in the Claims Court." (citations omitted)), aff'd, 905 F.2d 1515 (Fed.Cir.1990).

Finally, the plaintiff argues that the rulings of the IRS regarding her amended 1999 and 2001 tax forms are arbitrary and capricious because the IRS accepted her tax year 2003 filing in which she used the same rationale to obtain zero taxable income, zero tax liability, and a refund on her withheld 2003 taxes. Ms. Sumter contends that the IRS is acting inconsistently and, therefore, arbitrarily by challenging her 1999 and 2001 tax filings, which contain the same justifications as the 2003 return. The defendant responds that Ms. Sumter's amended 1999 and 2001 forms were reviewed and disallowed after IRS personnel considered the merits of the claims. According to the defendant, Ms. Sumter's tax year 2003 refund was computer generated after the computer did not discover any arithmetical errors. The 2003 return has not been audited and is still subject to audit and disallowance. As explained by the defendant, "[u]pon audit of plaintiff's 2003 tax return, the IRS could assess an income tax deficiency against plaintiff for that year and reverse the credits that it made ...." The fact that the IRS has not yet labeled her 2003 tax return as frivolous should not provide the plaintiff with any comfort regarding her earlier returns. The IRS's treatment of the plaintiff's 2003 tax return, to date, does not justify erroneous deductions on the plaintiff's 1999 and 2001 returns.

The plaintiff also seeks $150,000.00 in "exemplary damages" (sometimes referred to as punitive damages), as well as $150,000.00 on the basis of "extrinsic fraud" and $150,000.00 on the basis of "intrinsic fraud." The defendant contends that this court does not have jurisdiction, pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), over these claims because the plaintiff is requesting relief from tortious actions, or asserting claims for declaratory or injunctive relief.

It is well established that the Court of Federal Claims lacks jurisdiction over cases sounding in tort. The modern Tucker Act limits the jurisdiction of the Court of Federal Claims to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(2) (2000). Furthermore, courts which have inquired into the scope of the Tucker Act's jurisdictional grant have concluded that section 1491 does not grant jurisdiction over tort claims to the Court of Federal Claims. See New Am. Shipbuilders v. United States, 871 F.2d 1077, 1079 (Fed. Cir.1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act...."); Tree Farm Dev. Corp. v. United States, 218 Ct.Cl. 308, 316, 585 F.2d 493, 498 (1978) (noting that the Court of Claims "specifically lacks jurisdiction in cases sounding in tort" under the Tucker Act); Whyte v. United States, 59 Fed.Cl. 493 (2004) (stating that the Tucker Act does not grant the court jurisdiction over independent tort claims); Cottrell v. United States, 42 Fed.Cl. 144, 148 (1998) ("The Tucker Act limits the court's jurisdiction to non-tort money suits against the United States ...."); see also Brown v. United States, 105 F.3d at 623 ("The Court of Federal Claims ... lacks jurisdiction over tort actions against the United States."); Le-Blanc v. United States, 50 F.3d 1025, 1030 (Fed.Cir.1995) (noting that the claims at issue were "tort claims, over which the Court

of Federal Claims has no jurisdiction"); *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir.1993) ("It is well settled that the United States Court of Federal Claims lacks-and its predecessor the United States Claims Court lacked-jurisdiction to entertain tort claims."). The United States Supreme Court recognized as early as 1868 that Congress did not intend to confer on the Court of Claims jurisdiction over tort actions against the government: "The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts." *Gibbons v. United States,* 8 Wall. 269, 75 U.S. 269, 275, 19 L.Ed. 453 (1868). Finally, "[j]urisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act." *McCauley v. United States,* 38 Fed.Cl. 250, 264 (1997), *aff'd,* 152 F.3d 948 (Fed.Cir.1998) (table), *cert. denied,* 525 U.S. 1032, 119 S.Ct. 574, 142 L.Ed.2d 478 (1998), *reh'g denied,* 525 U.S. 1173, 119 S.Ct. 1102, 143 L.Ed.2d 101 (1999); *see also* 28 U.S.C. § 1346(b) (2000); *Wood v. United States,* 961 F.2d 195, 197 (Fed.Cir.) ("[D]istrict courts have ... exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act, [28 U.S.C.] § 1346(b)."), *reh'g denied* (1992); *Martinez v. United States,* 26 Cl.Ct. 1471, 1476 (1992) ("The district courts have exclusive jurisdiction in [Federal Tort Claims Act] actions."), *aff'd,* 11 F.3d 1069 (Fed.Cir.1993) (table). Any claim the plaintiff might assert for tort relief, therefore, cannot be entertained in this court.

Whether an action sounds in tort, however, is determined not by the nomenclature chosen by the parties, but by the character of the underlying dispute. *See Brazos Elec. Power Co-op., Inc. v. United States,* 144 F.3d 784, 787 (Fed.Cir.1998) ("[W]e customarily look to the substance of the pleadings rather than their form."); *Nat'l Center for Mfg. Sciences v. United States,* 114 F.3d 196, 199 (Fed.Cir.1997) ("Notwithstanding the imprecision of the complaint, we therefore 'look to the true nature of the action in determining the existence or not of jurisdiction.'") (quoting *Katz v. Cisneros,* 16 F.3d 1204, 1207 (Fed.Cir.1994)). The court will not dismiss a claim, the substance of which is within the court's jurisdiction, simply because a party describes it as "tortious." Similarly, the court's jurisdiction is not satisfied by a complaint which simply alleges tort causes of action without labeling them as such.

The plaintiff's claims for exemplary damages and damages for "extrinsic" and "intrinsic" fraud all fail in this court. This court lacks jurisdiction over the plaintiff's vague exemplary damages and "extrinsic" and "intrinsic" fraud claims, which challenge the actions of IRS officials. The plaintiff's claim for exemplary damages appears to challenge alleged, tortious actions of government officials that the plaintiff considers improper. The plaintiff's "extrinsic" and "intrinsic" fraud claims clearly sound in tort. *See Marcinkowsky v. United States,* 206 F.3d 1419, 1421 (Fed.Cir.2000) ("[I]ssues sounding in tort ... could not be considered by the Court of Federal Claims"); *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997) (stating that allegations of fraud in a tax assessment claim sound in tort). *See also Brown v. United States,* 35 Fed.Cl. at 265, 267 (rejecting jurisdiction in the court for exemplary damages). No jurisdiction exists to review the plaintiff's tort claims. Moreover, because this court has found the IRS to have acted properly with regard to the 1999 and 2001 tax returns, the amended returns and the associated penalties, no basis exists for the plaintiff's claims for fraud or damages.

## CONCLUSION

The clerk's office shall **DISMISS** the plaintiff's complaint, and enter **JUDGMENT** for the defendant, consistent with this opinion. Costs to the defendant.

**IT IS SO ORDERED.**