Joy F. GRIFFITHS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–87T.

United States Court of Federal Claims.

Oct. 29, 2002.

**28.** 283 U.S. 258, 264, 51 S.Ct. 395, 75 L.Ed. 1018 (1931).

Duncan D. Aukland, Worthington, OH, for plaintiff.

David Gustafson and Robert N. Dorosin, Washington, DC, for defendant.

## OPINION

WILSON, Judge.

This tax refund case is before the Court on cross-motions for summary judgment, pursuant to Rule 56 of the United States Court of Federal Claims ("RCFC"). The Court holds as a matter of law that plaintiff is not entitled to a business expense deduction and refund pursuant to the claim of right doctrine for a payment made in settlement of a state court action. Consequently, plaintiff's motion for summary judgment is DENIED, and defendant's motion for summary judgment is GRANTED.

## BACKGROUND

The relevant facts are not in dispute. Plaintiff is the former president and chief executive officer of Fairchild Buick–Cadillac–Pontiac, Inc. ("Fairchild"), a family-owned automobile dealership located in Ashland, Kentucky. As president, plaintiff owned 75 percent of Fairchild's outstanding stock. Plaintiff's daughter, Teresa Runyon, initially served as the vice president and general manager of Fairchild and owned 25 percent of its outstanding stock. Fairchild purchased its new car inventory from General Motors Corporation ("GM") and financed these new vehicles through General Motors Acceptance Corporation ("GMAC"), GM's financing subsidiary, under the "floor plan" method.[1]

---

1. Under "floor plan" financing, GMAC pays the vehicle invoice price to GM as a loan to Fairchild, and retains title or ownership of the vehicle as security. Each time Fairchild sold a vehicle, GMAC would give the dealership a certificate of title to give to the customer. In turn, Fairchild would remit the invoice price, plus interest, to GMAC. Although payment was due simultaneously with each sale, in practice, GMAC allowed Fairchild a grace period of five to ten days for the repayment of the invoice price, plus interest.

Fairchild experienced a period of slow sales during 1987 and 1988, and failed to remit payments to GMAC in a timely manner. In early 1988, as a result of its failure to remit payments, Fairchild fell into an "out-of-trust" [2] financial situation and was indebted to GMAC in the amount of $327,000. GMAC warned Fairchild of the possibility of franchise termination and confiscation of its vehicles if payment was not forthcoming. Plaintiff borrowed $125,000, which she remitted to GMAC, thereby satisfying her personal liability to Fairchild in the amount of $69,000 and creating a debt to the plaintiff in the amount of $56,000. Plaintiff's daughter sought further financial assistance for Fairchild from her father, Morris L. Griffiths, plaintiff's ex-husband, to pay the remaining amount owed by Fairchild to GMAC. Mr. Griffiths loaned the money to Fairchild to satisfy its remaining GMAC debt on the condition that Ms. Runyon obtain a controlling stock interest in the company.

On April 10, 1988, plaintiff and Ms. Runyon executed a Sales Agreement under which plaintiff sold her majority interest in Fairchild to her daughter for $5,000. Fairchild agreed to pay plaintiff an annual consulting fee of $48,000 payable in equal monthly installments for a ten-year term, as well as furnish plaintiff with a demonstration car every year and provide her with health insurance coverage.[3] Plaintiff agreed to resign as an officer and director, relinquish her signatory duties, and be bound by a covenant not to compete for twelve years.

In November 1988, Fairchild filed suit against plaintiff's son, James Michael Kilgore, and subsequently added plaintiff and Mr. Kilgore's corporation Miccan, Inc. as defendants. The lawsuit alleged that plaintiff was negligent and breached her fiduciary duty to Fairchild by authorizing expenditures during her tenure as its president and CEO to Mr. Kilgore and Miccan, Inc., without securing Mr. Kilgore's assets to protect Fairchild in the event of default. Fairchild also alleged that these expenditures provided no financial benefit to the dealership and that Fairchild was never reimbursed. In August 1989, the parties agreed to settle the litigation, and on November 10, 1989, the Boyd County Circuit Court entered judgment enforcing the terms of the settlement agreement.

On November 14, 1989, defendants in the Fairchild litigation (plaintiff, Mr. Kilgore, and Miccan, Inc.) moved the Circuit Court to vacate the Court's judgment, or in the alternative, grant them relief from the judgment. The Circuit Court denied the motion, and defendants appealed to the Court of Appeals of Kentucky. The Court of Appeals affirmed the November 10, 1989 judgment in June 1991.

In August 1991, plaintiff, Ms. Runyon, Mr. Kilgore, Mr. Griffiths, Fairchild, Miccan, and Fairhill Estates, Inc.[4] entered into an "Agreement of Mutual Confirmation and Mutual Release" (hereinafter, the "release agreement"). Among other things, the release agreement modified the 1988 Sales Agreement between plaintiff and her daughter. Effective August 15, 1991, Fairchild agreed to pay plaintiff semi-monthly consulting fees of $2,000 for a two-year period; commencing August 15, 1993, plaintiff's semi-monthly consulting fee would be reduced to $1,245 for the remaining five-year period of the consulting agreement. On December 11, 1992, plaintiff and Ms. Runyon further modified the sales agreement and release agreement, which resulted in Fairchild making a lump sum payment in the amount of $100,000 to plaintiff. In addition to the $100,000 lump payment, plaintiff was given a GM automo-

2. "Out-of-trust" refers to the delinquent financial position of an automobile dealership when it has sold vehicles but has not remitted the payments on its floor plan financing to the financial institution within the required time period, i.e., date of sale or the end of the grace period. When the dealership moves into an "out-of-trust" status, the financing institution has the right to terminate a dealership franchise.

3. From 1988 through 1990, Griffiths received consulting fees, together with the use of a demonstrator vehicle, totaling $129,300 for the three year period.

4. Fairhill Estates, Inc., a company wholly-owned by plaintiff, was joined to the Fairchild litigation as part of the suit's settlement. As part of the settlement agreement, Fairhill conveyed two acres of land to Fairchild.

bile, in exchange for releasing Fairchild from any future obligations.

For tax year 1991, plaintiff included Fairchild consulting fees in her gross income in the amount of $50,000 ($44,000 for cash and $6,000 as garnished payments). During 1991, she paid Fairchild $173,000 in cash and kind, pursuant to the Boyd Circuit Court judgment. Subsequently, in June 1994, Griffiths filed an amended return for the 1991 tax year, reporting the $173,000, less the $50,000 consulting fees for 1991, for a balance of $123,000 as miscellaneous deductions. Plaintiff sought a reduction of tax under the claim of right doctrine, contending that her payment of $173,000 to Fairchild in 1991 represented a restoration of $123,000 of consulting income that she had received under the sales agreement from 1988 through 1990.

In June 1997, the Internal Revenue Service determined that plaintiff had not established that any payments made pursuant to the 1991 release agreement qualified under the claim of right doctrine. As a result, plaintiff initiated this action. She seeks an alleged income tax overpayment of $17,634, plus statutory interest.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact

is one which will affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant for summary judgment bears the initial burden of demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. 2548. A cross-motion for summary judgment is a party's assertion that it, alone, is entitled to summary judgment. *A Olympic Forwarder, Inc. v. United States*, 33 Fed.Cl. 514, 518 (1995). The parties agree that there are no material facts in dispute. Therefore, they are entitled to a decision as a matter of law and summary judgment is appropriate.

The critical issues in this case are whether plaintiff's payment of $173,000 made pursuant to the 1991 release agreement in the state court negligence action (less the $50,000 of 1991 consulting income) (1) qualifies under the claim of right doctrine, codified at 26 U.S.C. § 1341 (1986)[5], and (2) constituted an ordinary and necessary business expense pursuant to § 162, thereby entitling plaintiff to a deduction and tax refund. The Court holds that plaintiff does not qualify for the deduction as a matter of law, and therefore is not entitled to a refund.

The claim of right doctrine codified by Section 1341[6] provides relief to a taxpayer who in one tax year includes an item as gross income and pays tax on that income, and then in a subsequent year is compelled to return the item, and thus to pay back the previously reported income or a portion thereof.[7] *See Culley v. United States*, 222

---

5. Further references to the "section" or "§ " in this opinion refer to title 26 of the United States Code.

6. Section 1341, provides in pertinent part:

(a) General rule. —If—
(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;
(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and
(3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter

for the taxable year shall be the lesser of the following:
(4) the tax for the taxable year computed with such deduction; or
(5) an amount equal to—
(A) the tax for the taxable year computed without such deduction, minus
(B) the decrease in tax under this chapter . . . for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

7. In *North Am. Oil Consol. v. Burnet*, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197 (1932), the Supreme Court held that "[i]f a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received

F.3d 1331, 1334 (Fed.Cir.2000). In order for plaintiff to invoke the claim of right doctrine and qualify for a deduction under § 1341, she bears the burden of proving that an item was included in her gross income for prior tax years because of an apparent unrestricted right to such item. § 1341(a)(1); *Indus. Aggregate Co. v. United States*, 284 F.2d 639, 644 (8th Cir.1960) (the taxpayer has the burden of proving it has overpaid taxes, and has a right to a refund); *See also United States v. Janis*, 428 U.S. 433, 440–41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Once an apparent claim of right is established, plaintiff must show that in a later tax year, she no longer had an unrestricted right to that item and the amount of deduction exceeds $3,000. § 1341(a)(2)-(3). To receive the benefit of § 1341, however, plaintiff must be entitled to a deduction under some other provision of the Code. Treas. Reg. § 1.1341–1(a)(1). Section 1341 does not independently create a deduction. *United States v. Skelly Oil Co.*, 394 U.S. 678, 683, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969).

Pursuant to the 1988 Sales Agreement, Fairchild paid plaintiff consulting fees, which she included in her gross income in the following manner: $18,000 in 1988; $55,820 in 1989; $55,480 in 1990; and $50,000 in 1991. The reporting of the consulting income on her tax returns supports the finding that plaintiff believed that she had an unrestricted right to the consulting fee. *Healy v. Comm'r*, 345 U.S. 278, 282, 73 S.Ct. 671, 97 L.Ed. 1007 (1953) ("There is a claim of right when funds are received and treated by a taxpayer as belonging to him.") Both parties agree that plaintiff treated the consulting fees, received from 1988 through 1991, as her own, satisfying the first part of the claim of right analysis.

■ The second inquiry is whether plaintiff was entitled to a deduction because she established, in a subsequent tax year, that she did not have an unrestricted right to such item or to a portion thereof. Courts

have ruled that there must be a "substantive nexus between the right to the income at the time of receipt and the subsequent circumstances necessitating a refund." *Dominion Res., Inc. v. United States*, 48 F.Supp.2d 527, 540 (E.D.Va.1999), *aff'd*, 219 F.3d 359 (4th Cir.2000). In other words, the obligation to repay the money must arise from the "same circumstances, terms and conditions of the transaction whereby the amount was included in income." *Kraft v. United States*, 991 F.2d 292, 295 (6th Cir.1993). In *Kraft*, a physician remitted $160,000 to his insurance company as a result of a plea agreement to settle a false claims charge. He then sought a tax refund under § 1341, but the U.S. Court of Appeals for the Sixth Circuit affirmed the denial of his claim on the ground that the remittance resulting from the plea agreement was not substantially related to his salary. Similarly, in *Bailey v. Comm'r*, 756 F.2d 44 (6th Cir.1985), the Sixth Circuit held that a taxpayer's payment of a civil penalty for violation of a consent order was not a repayment of his salary from the employer corporation and, therefore, § 1341 was inapplicable.

■ In this case, the state court litigation and resulting release agreement have no connection to plaintiff's role as a consultant. The Fairchild litigation arose from plaintiff's alleged negligence and breach of fiduciary duty as former President and CEO of Fairchild. The actions giving rise to the suit occurred prior to the April 1988 sales agreement, in which she agreed to resign as officer and director. (Def.'s App. B at B–67.) As plaintiff's counsel reinforced during oral argument, "the actions undertaken that were complained of in the litigation were actions undertaken prior to the sale of the stock in the corporation [i.e., the sales agreement]." (Tr. at 37:1–4.) Thus, the connection between the sales agreement and release agreement is incidental rather than direct. The fact that the sales agreement obligated Fairchild to compensate the plaintiff and the release agreement subsequently obligated

income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." If it is later determined that the taxpayer

did not have an unrestricted claim of right to the funds, she would be entitled to a deduction in the year of repayment, but taxes due in prior year(s) would remain unchanged. *Id.*

plaintiff to Fairchild (for similar amounts) is not sufficient to entitle her to a refund under § 1341. As in *Bailey* and *Kraft*, plaintiff has failed to demonstrate a substantive nexus between her entitlement to the income from Fairchild due to the sales agreement and her later remittance to Fairchild as a result of the release agreement.

Plaintiff asserts that her alleged duty to return the consulting fees to Fairchild arose from two clauses of the sales agreement: 1) the "contingency clause," which made the sales agreement contingent upon GM's approval of Ms. Runyon as the new franchise dealer (Def.'s App. B at B–63); and 2) the "guaranty clause" which prevented plaintiff's release from any personal loan guarantees she made on behalf of Fairchild until the dealership had sufficient capital and equity funds to meet GM standards and requirements (Def.'s App. B at B–62). On the basis of these two clauses, plaintiff contends her fiduciary duties to Fairchild continued past the April 1988 sales agreement date, therefore linking the release agreement with the sales agreement.

However, plaintiff's assertion that she actively participated in Fairchild's business dealings as an officer or director after 1989 is unsupported. (Tr. at 36:1–3.) According to plaintiff, the purpose of the contingency clause was to protect Fairchild in case Ms. Runyon was not approved to be a GM dealer. (Def.'s App. C at C–188.) The need to obtain approval from GM to become a certified dealer, however, is a standard GM requirement and not unique to Fairchild. (Def.'s App. C at C–139–140.) In addition, although plaintiff personally guaranteed several Fairchild loans, the personal guaranty did not extend her obligations as a Fairchild officer. It is indisputable that the sales agreement terminated her official responsibilities. (Def.'s App. C at C–137–139.) Therefore, the Court rejects plaintiff's contention that the sales agreement clauses are sufficiently tied to her unrestricted right to the consulting fees to warrant a deduction under § 1341.

Moreover, the Court is not persuaded by plaintiff's argument that her payment of $173,000 in settlement of the state court judgment is deductible as an "ordinary and necessary" business expense under § 162. Section 162 allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." § 162(a). Plaintiff contends that the payment of $173,000 arose from her activities as a corporate officer, and that being a corporate officer is a "trade or business." *Conti v. Comm'r*, 31 T.C.M. (CCH) 348, 1972 WL 2217 (T.C.1972) (preservation and protection of one's business reputation in order to enable the taxpayer to continue to carry on such activities may be deemed a business expense). Although it is true that plaintiff, prior to April 1988, was the CEO of Fairchild, the Court does not adopt the view that an expenditure is automatically deemed a § 162 business expense merely because it was made by an officer of the company. In order for a repayment to a corporation to be deemed a business expense under § 162, there must be some "business benefit" or the repayment must be "ordinary and necessary" to the taxpayer's position as a corporate director or officer. *Blanton v. Commissioner*, 46 T.C. 527, 530–31, 1966 WL 1180 (1966). *See also Iowa Southern Utilities Co. v. C.I.R.*, 333 F.2d 382 (8th Cir.1964); *Silberman v. United States*, 40 Fed.Cl. 895 (1998). Plaintiff's payment of $173,000 to Fairchild did not result solely from "the taxpayer's profit-seeking activities." *United States v. Gilmore*, 372 U.S. 39, 48, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). In evaluating whether plaintiff's payment to Fairchild as a result of the release agreement was a personal or business expense, "it is the origin of the liability out of which the expense accrues" or "the kind of transaction out of which the obligation arose ... which [are] crucial and controlling." *Id.* (quoting *Deputy v. du Pont*, 308 U.S. 488, 496, 60 S.Ct. 363, 84 L.Ed. 416 (1940)).

Plaintiff unsuccessfully relies on *Great Island Holding Corp. v. Comm'r*, 5 T.C. 150, 1945 WL 14 (1945), in which preferred shareholders sued for damages against the principal officer of the corporation for alleged mismanagement of corporate affairs. The tax court granted the taxpayer a deduction for the payment made in settlement of that dispute. *Id.* at 163. However, *Great Island*

*Holding Corp.* is distinguishable on the ground that the shareholders were contesting an officer's decision to sacrifice their interests in an attempt to recoup losses by entering into a highly speculative venture that, if realized, would be economically beneficial to the shareholders. *Id.* In contrast, plaintiff's payments to Fairchild arose out of transactions for the benefit of her son, Mr. Kilgore, and his business, Miccan, Inc, and not primarily for the benefit of Fairchild.

Even if plaintiff's transactions with Mr. Kilgore and Miccan had business elements and partially served Fairchild's interest, the personal purpose served by the payments was more substantial. Courts have held that where transactions have both business and personal elements, the personal element takes precedence for tax purposes. *Bodzin v. Comm'r,* 509 F.2d 679, 681 (4th Cir.1975) (if an item can be deemed a business and personal expense, § 161 indicates that § 262 takes precedence over § 162); *Heineman v. Comm'r,* 82 T.C. 538, 542, 1984 WL 15554 (1984) (when both § 162 and § 262 may be applicable, § 262's "personal, living, and family expense" takes precedence over § 162's "ordinary and necessary business expense"). The Fairchild litigation resulted from transactions and loans for the benefit of Griffiths' son. Consequently, plaintiff's resulting liability to the company constituted a nondeductible § 262 personal expense.

In sum, although it is undisputed that plaintiff had an unrestricted right to the consulting fees from 1988 through 1991, which she reported as income, she has failed to demonstrate that in a later year she did not have an unrestricted right to those fees and was required to return them to Fairchild. The lawsuit and subsequent release agreement that created plaintiff's liability to Fairchild resulted from actions taken prior to the sales agreement and independent from her consulting fees. Furthermore, plaintiff's payment of $173,000 to Fairchild as part of the release agreement was not an "ordinary and necessary" business expense warranting a deduction under § 162. Consequently, plaintiff may not benefit from the claim of right doctrine under § 1341 and is not entitled to a refund of $17,634.

For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

The Clerk of Court is directed to enter judgment for the defendant. Each party shall bear its own costs.

**IT IS SO ORDERED.**