In re Terri L. STEFFEN, Debtor.

Terri L. Steffen, Appellant,

v.

The United States of America, Appellee.

No. 8:06–CV–29–T–24TGW.

United States District Court,
M.D. Florida,
Tampa Division.

July 3, 2006.

Edward J. Peterson, III, Harley Edward Riedel, II, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Appellant.

Mary Apostolakos Hervey, U.S. Dept. of Justice, Washington, DC, for Appellee.

### ORDER

BUCKLEW, District Judge.

This cause comes before the Court on an appeal from a final order of the United States Bankruptcy Court for the Middle District of Florida entered on October 31, 2005. Appellant, Terri L. Steffen, filed a Brief. (Doc. No. 11). Appellee, United States of America, filed a Brief in Response. (Doc. No. 20). Appellant, Terri L. Steffen, filed a Reply Brief. (Doc. No. 21).

### I. Standard of Review

■ The Court independently reviews the bankruptcy court's decision. *See In re Bush,* 62 F.3d 1319, 1322 (11th Cir.1995). The bankruptcy court's findings of fact are subject to a clearly erroneous standard of review, and the bankruptcy court's conclusions of law are reviewed *de novo. See id.; In re Chase & Sanborn Corp.,* 904 F.2d 588, 593 (11th Cir.1990).

### II. Procedural History and Factual Background

Appellant, Terri L. Steffen, appeals the bankruptcy court's order denying Debtor Terri L. Steffen's tax refund claim made pursuant to 26 U.S.C. § 1341. The factual background leading to this bankruptcy appeal involves a lengthy litigation between Paul A. Bilzerian and the Securities and Exchange Commission ("SEC").[1]

Paul A. Bilzerian ("Bilzerian") and Terri L. Steffen ("Steffen") are husband and wife. On September 27, 1989, Bilzerian was convicted of securities fraud and conspiracy to defraud the United States in the United States District Court for the Southern District of New York. *U.S. v. Bilzeri-*

---

1. While this Court cites to several reported opinions involving Bilzerian, the Court only takes judicial notice of the dates, the judicial acts taken, and the subject matter of the vari-

ous cases, and not the findings of fact made in those cases. See *United States v. Jones,* 29 F.3d 1549, 1553–55 (11th Cir.1994).

*an*, 926 F.2d 1285 (2nd Cir.1991), *cert. den.* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). The convictions were based on transactions Bilzerian made between May 1985 and October 1986 involving the common stock of Cluett, Peabody and Company, Inc. ("Cluett") and the Hammermill Paper Company ("Hammermill"). *Id.* at 1289.

Bilzerian and Steffen filed joint income tax returns for the tax years 1985 and 1986. In their 1985 tax return, Bilzerian and Steffen included $2,350,067.00 in net income from the Bilzerian & Brodovsky partnership. (Government's Exhibit 23). This income was generated from the purchase and sale of Cluett stock. (Doc. No. 11 at 5). In their 1986 tax return, Bilzerian and Steffen included $16,068,617.00 in net income from various partnerships. (Government's Exhibits 24, 25). This income was generated from the purchase and sale of Hammermill stock.

Following the criminal conviction, the SEC brought a civil suit against Bilzerian in the United States District Court for the District of Columbia ("D.C.Court") seeking disgorgement of any illegal profits Bilzerian had received from the fraud involving the Cluett and Hammermill stock. On January 28, 1993, the D.C. Court ordered Bilzerian to disgorge $4,821,124.00 in total profits gained from the Cluett stock and $28,319,663.07 in total profits gained from the Hammermill stock. *S.E.C. v. Bilzerian*, 814 F.Supp. 116 (D.D.C.1993) ("Disgorgement Order").

On August 21, 2000, the D.C. Court found Bilzerian in civil contempt of the Disgorgement Order. *S.E.C. v. Bilzerian*, 112 F.Supp.2d 12 (D.D.C.2000). The D.C. Court found that Bilzerian was able to pay at least part of the Disgorgement Order, and that Bilzerian had "transferred his substantial assets into a complex ownership structure of off-shore trusts and family-owned companies and partnerships," which included: Overseas Holding Limited Partnership ("OHLP"), Overseas Holding Company ("OHC"), Bicoastal Holding Company ("BHC"), and The Paul A. Bilzerian and Terri L. Steffen 1995 Revocable Trust ("1995 Trust"). *Id.* at 18–23.

On December 22, 2000, the D.C. Court entered an order appointing Deborah R. Meshulam as a receiver ("Receiver") for the purpose of "identifying, marshaling, receiving, and liquidating" Bilzerian's assets in order to satisfy of the disgorgement order. *SEC v. Bilzerian*, 127 F.Supp.2d 232 (D.D.C.2000). On May 11, 2001, the D.C. Court entered an order temporarily freezing assets in which Bilzerian had an interest. (Debtor's Exhibit 37). The D.C. Court found that Bilzerian had an interest in all the assets of the 1995 Trust, the OHLP, the OHC, the BHC, the Loving Spirit Foundation ("Loving Spirit"), and the Puma Foundation ("Puma") (collectively the "Entities"). The Entities had assets in Wells Fargo Bank accounts, and the OHLP owned the real property located at 16229 Villareal de Avila, Tampa Florida ("Tampa Property"). (Debtor's Exhibit 37 at 3, 7).

On May 29, 2001, Steffen filed a voluntary bankruptcy petition under Chapter 11 in the bankruptcy court in the Middle District of Florida. (Doc. 395 at 3). On June 1, 2001, the D.C. Court entered an order reaffirming that court's May 11, 2001 Order and ordered that the Wells Fargo Bank transfer the assets in the frozen accounts into the registry of the D.C. Court. (Debtor's Exhibit 38). The D.C. Court also held that it had jurisdiction over the Tampa Property.

Steffen voluntarily intervened in the SEC's case against Bilzerian to challenge the freezing of the Wells Fargo accounts and the Tampa Property. (Doc. No. 370,

trial transcript, 58–59, 110).[2] On December 19, 2001, Steffen and the Entities[3] voluntarily entered into a settlement agreement with the SEC in which Steffen agreed to transfer a fifty percent interest in the Tampa Property and fifty percent of the assets in the Wells Fargo accounts to the Receiver. Pursuant to the consent agreement, the remaining fifty percent of the profits from the sale of the Tampa Property and fifty percent of the assets in the Wells Fargo accounts would be released to Steffen or the appropriate entity after the transfer. (Debtor's Exhibit 39 at 9; Government's Exhibit 15 at 3). Bilzerian was not a party to this agreement.

On November 4, 2001, the Internal Revenue Service ("IRS") filed a Proof of Claim with the bankruptcy court in Steffen's bankruptcy case in the amount of $5,856,992.75. (Doc. No. 395 at 4). On February 6, 2002, Steffen filed an Objection to the Claim filed by the IRS and contended she did not owe any taxes, and she was entitled to a tax refund pursuant to 26 U.S.C. § 1341.[4] The bankruptcy court severed Steffen's claim for a refund pursuant to § 1341 from her objection to the IRS's claim. After this ruling, Steffen filed a motion requesting that the bankruptcy court find that she was entitled to a refund in the amount of $5,307,230.00. (Doc. No. 246). Both Steffen and the IRS filed cross motions for summary judgment as to Steffen's eligibility for a tax refund under § 1341. The bankruptcy court denied both motions. (Doc. No. 348). On May 24, 2005, the bankruptcy court conducted a trial on whether Steffen was entitled to a § 1341 tax refund.

On October 31, 2005, the bankruptcy court entered an order in which it denied Steffen's claim for a tax refund pursuant to 26 U.S.C. § 1341. (Doc. No. 395). On November 16, 2005, the bankruptcy court denied Steffen's motion for reconsideration. (Doc. No. 400).

### III. Bankruptcy Court's Order

In its order denying Steffen's claim for a tax refund pursuant to § 1341, the bankruptcy court found that Steffen had failed to establish a nexus between her transferring certain assets to the Receiver in 2002 and the Cluett and Hammermill income that Bilzerian and Steffen included in their tax returns for the years 1985 and 1986. In addition, the bankruptcy court found that Steffen had submitted no evidence that any of the property transferred to the Receiver was her own property as opposed to Bilzerian's property. Accordingly, the bankruptcy court held that Steffen had not met her burden of proving that she was entitled to a § 1341 refund. (Doc. No. 395).

### IV. Issues on Appeal

Steffen raises three issues on appeal: (1) whether the bankruptcy court erred when it failed to apply 26 U.S.C. § 7491, which Steffen argues should have shifted the burden of proof to the government with respect to her refund claim, (2) whether there is a nexus between the Cluett and Hammermill income earned by Bilzerian and Steffen in 1985 and 1986 and

---

**2.** Citations to the trial transcript of Steffen's claim for a tax refund are in the following format: (Tr. at ＿＿).

**3.** At the time she entered into to the settlement agreement, Steffen had control over the OHLP, the OHC, the BHC, Loving Spirit, Puma, and the 1994 Trust.

**4.** In April 2003, Bilzerian and Steffen filed an Application for Tentative Refund, with the IRS in which they asserted that they were owed a refund pursuant to § 1341 of $5,307,230.00. (Government's Exhibit 36).

Steffen's transfer of property to the Receiver in 2002, and (3) whether Steffen transferred at least $3,000.00 of her property to the Receiver, thereby satisfying § 1341's statutory requirement that the amount of the deduction exceed $3,000.00. (Doc. No. 11 at 9).

#### A. Section 1341

■ Pursuant to 26 U.S.C. § 1341,[5] a taxpayer is entitled to relief if in one year the taxpayer included an item as gross income and paid tax on that income, then in a subsequent year is compelled to return the item. *Griffiths v. United States,* 54 Fed.Cl. 198, 201 (2002). In order to qualify for relief under 26 U.S.C. § 1341, the taxpayer bears the burden of proving that an item was included in her gross income for the prior taxable year and that she had an apparent unrestricted right to the item. Then, in a later tax year, it is established that she no longer had an unrestricted right to that item, and the amount of the deduction exceeds $3,000.00. *Id.* at 202. Since § 1341 does not independently create a deduction, a taxpayer must be entitled to a deduction under another provision of the code. Id. at 202.

#### B. Nexus

Steffen argues that the bankruptcy court erred in finding that she failed to establish a nexus between the profits from the Cluett and Hammermill stock included as income on her 1985 and 1986 tax returns and her transfer of assets to the Receiver in 2002. (Doc. No. 11 at 14).

■ "Courts have universally ruled that there must be a 'substantive nexus between the right to the income at the time of receipt and the subsequent circumstances necessitating a refund.' " *Cinergy Corporation v. U.S.,* 55 Fed.Cl. 489, 507 (2003) (citation omitted). Under section 1341(a)(2), the lack of an unrestricted right to income must arise out of the circumstances, terms, and conditions of the original payment on such income and not out of circumstances, terms, and conditions imposed by a subsequent agreement between the payor and payee. *Id.* "Accordingly, if the taxpayer 'voluntarily took some action after the receipt of apparently unrestricted income which required the taxpayer to thereafter return the remuneration,' section 1341 does not apply." *Id.*

■ The bankruptcy court made the following findings of fact: Steffen was not a party to the civil action initiated by the SEC against Bilzerian that resulted in the disgorgement of illegal income received from the Cluett and Hammermill stock transactions. (Tr. 45). The civil action was only against Bilzerian and the Disgorgement Order only required that Bilzerian disgorge the illegal profits. Steffen voluntarily intervened in the lawsuit in an attempt to unfreeze some of the assets that were frozen by the D.C. Court. (Tr.

---

5. Section 1341, provides in pertinent part:
   (a) General rule.—If—
   (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;
   (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and
   (3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:
   (4) the tax for the taxable year computed with such deduction; or
   (5) an amount equal to—
     (A) the tax for the taxable year computed without such deduction, minus
     (B) the decrease in tax under this chapter
   . . .
26 U.S.C. § 1341.

110). Steffen then voluntarily entered into an agreement with the SEC and agreed to grant the Receiver a fifty percent interest in the sale of the Tampa Property and a fifty percent interest in the funds from the Wells Fargo accounts. (Doc. No. 395 at 3). The transferred assets were then used to satisfy the Disgorgement Order levied against Bilzerian. Steffen was not ordered by the D.C. Court to enter into this agreement, but did so voluntarily. (Tr. at 69–70).

The bankruptcy court found that Steffen voluntary took actions after the receipt of the Cluett and Hammermill income which thereafter required her to forfeit some of that income. The bankruptcy court found that even though the settlement agreement was binding upon Steffen, her voluntary decision to intervene into the litigation against Bilzerian, and then her voluntarily decision to enter into a settlement agreement rendered § 1341 inapplicable, and Steffen was not entitled to a refund.

On appeal, Steffen argues that there was nothing voluntary about the settlement agreement she entered into with the SEC, and her repayment was involuntary. (Doc. No. 21 at 9). She argues that she had no choice but to enter into the agreement, and the agreement was not voluntary. (Doc. No. 21 at 11). Steffen argues that *Barrett v. C.I.R.*, 96 T.C. 713, 1991 WL 80644 (1991), is factually similar to the case before this Court. This Court disagrees.

In *Barrett*, a stockbroker reported income from a sale of options on his income tax return. The SEC notified the stockbroker that it was instituting administrative proceedings to remove his brokerage license for possible insider trading violations. The stockbroker was subpoenaed to testify before a grand jury in the United States District Court for the District of Columbia. Two groups of specialist market maker option brokers filed civil lawsuits against him for $10 million. *Id.* at 715. The stockbroker settled the civil suits by disgorging $54,400.00 of the profit he made from the sale of the options. The SEC then dropped all administrative proceedings against the stockbroker. The stockbroker then filed for a tax refund pursuant to 26 U.S.C. § 1341. The tax court noted that a voluntary restoration of income would not suffice to trigger § 1341. *Id.* at 719. However, the tax court found that the stockbroker had not returned the income voluntarily. The court stated that since the SEC had initiated administrative proceedings against him and he had been civilly sued for $10 million, he was under a legal obligation to restore the money. *Id.*

In the case before this Court, Steffen was under no such legal obligation. The civil suit initiated by the SEC was not against Steffen; rather, it was against Bilzerian. Steffen was under no obligation to disgorge any money pursuant to the Disgorgement Order. Steffen voluntarily intervened in the litigation against Bilzerian and voluntarily entered into the settlement agreement. Furthermore, the settlement agreement specifically stated that Steffen entered into the agreement "freely and voluntarily, and that no threats ... offers, promises or inducements have been made by the Commission, its agents, employees, or representatives, or the Receiver ... to induce [Steffen] to enter into the Consent." (Debtor's Exhibit 39 at 2).

Steffen also cites *Dominion Resources, Inc. v. United States*, 219 F.3d 359 (4th Cir.2000), in support. This case is also factually distinguishable. In *Dominion Resources*, Dominion Resources, Inc. ("DRI") overcharged its customers approximately $10 million. DRI then paid taxes on this money. The Federal Energy Regulatory Commission and the North Carolina Utilities Commission ordered

DRI to remit the $10 million to its customers. *Id.* at 362. The court found that DRI's refund to its customers did entitle it to relief under § 1341 in part because DRI was ordered to repay that money. *Id.* at 368.

In the case before this Court, Steffen was not ordered to do anything. During the trial before the bankruptcy court, Steffen read from the portion of the Consent Order that stated that Steffen agreed to remit fifty percent of the net proceeds from the sale of the Tampa Property to the Receiver. The bankruptcy court then asked:

> The Court: You were not required to do that. You entered into a settlement; right?
>
> Witness: Yes.
>
> The Court: You were not ordered by the court to do that.
>
> Witness: Right.
>
> The Court: This is a settlement agreement with the Receiver.
>
> The Witness: Correct.

(Tr. 69–70). When discussing the civil lawsuit brought by the SEC to recover the funds from Bilzerian, the Court asked the following:

> The Court: You were not a party to that lawsuit?
>
> The Witness: No, I was not.

(Tr. at 46).

Steffen testified at trial that the Receiver threatened litigation against her if she did not agree to surrender to the Receiver more than half of her assets. (Tr. 70). However, in the settlement agreement, Steffen specifically stated that she was entering into the agreement voluntarily and that no threats had been made to induce her into the agreement. (Debtor's Exhibit 39). Although Steffen might have testified that she did not voluntarily agree to transfer assets to the Receiver, the bankruptcy court found that she did, and this Court must defer to the trial court's findings of fact in that he was in a much better position to judge the credibility of the witnesses who testified before him. *Burrell v. Board of Trustees of Georgia Military College,* 125 F.3d 1390, 1394 (11th Cir.1997). Therefore, this Court finds no error in the bankruptcy court's determination that Steffen "voluntarily agreed to grant to the Receiver" certain assets. (Doc. No. 395 at 3).

"[A] restoration agreement voluntarily executed after [income] has been received does not establish that the taxpayer" is entitled to a refund pursuant to § 1341. *Pahl v. C.I.R.,* 67 T.C. 286, 291, 1976 WL 3655 (1976). Accordingly, this Court finds that the bankruptcy court did not err in his determination that Steffen failed to establish a nexus between the purchase and sale of the Cluett and Hammermill stock included on her 1985 and 1986 tax returns and her transferring funds to the Receiver in 2002.

### C. Transfer Property to the Receiver

Steffen also argues that the bankruptcy court erred in finding that she presented no evidence to support her claim that the assets transferred to the Receiver were her assets. Since this Court finds that Steffen failed to establish the requisite nexus, the Court need not address whether Steffen transferred at least $3,000.00 of her property to the Receiver.[6]

### C. Burden of Proof

█ In the order denying Steffen's claim for a tax refund, the bankruptcy

---

6. Pursuant to § 1341(a)(1), the government argues Steffen also failed to prove that she had an unrestricted right to the Cluett and Hammermill income, because income obtained by fraudulent means deprived her of a claim of right as a matter of law. (Doc. No. 20 at 20–21). The government also argues that Steffen failed to prove that she was enti-

court stated that "[i]t has been well established through case law that the debtor has the burden of proving the evidence that supports his or her claim to the refund." (Doc. No. 395 at 5). The bankruptcy court found that Steffen did not meet her burden of proving that she was entitled to a § 1341 refund. (Doc. No. 395 at 8).

Steffen argues that the bankruptcy court erroneously placed the burden of proof on her. (Doc. No. 11 at 12). Specifically, Steffen argues that the bankruptcy court erred by failing to apply 26 U.S.C. § 7491, which she argues should have shifted the burden of proof to the government. Section 7491 states:

> If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

26 U.S.C. § 7491(a). "Credible evidence" is "the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue *if no contrary evidence were submitted.*" *Griffin v. Commissioner of Internal Revenue*, 315 F.3d 1017, 1021 (8th Cir.2003)(emphasis in original).

The bankruptcy court did not state in its order whether Steffen had offered "credible evidence" with respect to any factual issue. Steffen argues that she presented credible evidence that she was entitled to a refund; therefore, the burden should have

shifted to the government. (Doc. No. 11 at 14). However, the evidence presented to the bankruptcy court clearly indicated that Steffen voluntarily intervened into the litigation against Bilzerian and voluntarily entered into a settlement agreement, and there was no credible evidence to the contrary.[7] Therefore, the Court finds that the bankruptcy court did not err finding that Steffen had the burden of proof.

## V.  Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that the decision of the bankruptcy court is **AFFIRMED.** The clerk is directed to close this case.

**DONE AND ORDERED**

---

tled to any tax deduction. (Doc. No. 20 at 23). The bankruptcy court did not make any factual findings as to these two issues; therefore, the Court will not address them on appeal. *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990)("The bankruptcy court must make all necessary findings of fact; if the bankruptcy court's findings are 'silent or ambiguous as to an outcome deter-

minative factual question,' remand to the bankruptcy court is required").

7.  The documentary evidence admitted at the trial as well as Steffen's own testimony in response to the bankruptcy court's questions establish that Steffen's actions were voluntarily taken.